**SUMMONS - CIVIL**
JD-CV-1  Rev. 2-20
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

Instructions are on page 2.

| For information on ADA accommodations, contact a court clerk or go to: **www.jud.ct.gov/ADA.** |
| --- |

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* **123 Hoyt Street, Stamford, CT 06905** | Telephone number of clerk ( 203 ) 965 - 5308 | Return Date *(Must be a Tuesday)* 01/25/2022 |
| --- | --- | --- |
| ☒ Judicial District        G.A. ☐ Housing Session        Number: ___ | At *(City/Town)* **Stamford /Norwalk** | Case type code *(See list on page 2)* Major: **T**    Minor: **90** |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* **PASTORE LLC** | Juris number *(if attorney or law firm)* **433711** |
| --- | --- |
| Telephone number ( 203 ) 658 - 8454 | Signature of plaintiff *(if self-represented)* |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.  ☒ Yes  ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book *(if agreed)* **JPASTORE@PASTORE.NET** |
| --- | --- |

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
| --- | --- | --- |
| **First plaintiff** | Name:  **MAGUIRE, PATRICIA KANE** Address:  77 HAVEMEYER LANE, UNIT 210, STAMFORD, CT 06902 | P-01 |
| **Additional plaintiff** | Name: Address: | P-02 |
| **First defendant** | Name:  **AMERIPRISE FINANCIAL SERVICES, LLC** Address:  Attn: CT Corporation System, 67 Burnside Avenue, East Hartford, CT 06108-3408 | D-01 |
| **Additional defendant** | Name:  **AMPF HOLDING, LLC** Address:  Attn: The Corporation Company, 40600 Ann Arbor Road E Ste. 201, Plymouth, Michigan 48170 | D-02 |
| **Additional defendant** | Name:  **ANTHONY JOSEPH SALERNO** Address:  128 Gerrish Lane, New Canaan, CT 06840 | D-03 |
| **Additional defendant** | Name:  **JAMES J. FLAHERTY JR.** Address:  14 Hurds Hill Road, Woodbury, CT 06798 | D-04 |
| Total number of plaintiffs: **1** | Total number of defendants: **4** | ☐ Form JD-CV-2 attached for additional parties |

**Notice to each defendant**

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date **12/27/2021** | Signed *(Sign and select proper box)* | ☒ Commissioner of Superior Court ☐ Clerk | Name of person signing **Paul Fenaroli, Esq.** |
| --- | --- | --- | --- |

| If this summons is signed by a Clerk: a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. c. The court staff is not permitted to give any legal advice in connection with any lawsuit. d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | *For Court Use Only* File Date |
| --- | --- |

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
| --- | --- | --- | --- |

Print Form        Page 1 of 2        Reset Form

DOCKET NO.: _____

PATRICIA KANE MAGUIRE,        )

                                   )

                  Plaintiff,    )    SUPERIOR COURT

                                   )

    vs.          )    JUDICIAL DISTRICT OF

                                   )

AMERIPRISE FINANCIAL SERVICES, LLC,   )    STAMFORD/NORWALK

AMPF HOLDING, LLC,   )

ANTHONY JOSEPH SALERNO, AND   )    AT STAMFORD

JAMES J. FLAHERTY JR.   )

                                   )    DECEMBER 27, 2021

                  Defendants.    )

                                   )

## **COMPLAINT**

For her Complaint against Defendants Ameriprise Financial Services, LLC ("AFS"), AMPF Holding, LLC ("AMPF") (together, "Ameriprise"), Anthony Joseph Salerno ("Salerno") (Ameriprise and Salerno collectively the "Ameriprise Defendants"), and James J. Flaherty Jr. ("Flaherty") (collectively, "Defendants"), Plaintiff Patricia Kane Maguire ("Ms. Maguire" or "Plaintiff"), by and through her undersigned counsel, sets forth and alleges as follows:

## **NATURE OF ACTION**

1.    This case arises out of Defendants' active participation in, and failure to mitigate, the financial exploitation of Agnes Patricia Kane ("Mrs. Kane"), who passed away on January 22, 2019 at the age of 85, which caused foreseeable and substantial harm to Plaintiff.

2.    In the two years preceding Mrs. Kane's death, a series of fraudulent and coerced transactions resulted in the theft of substantial sums from Plaintiff by virtue of the wrongful exclusion of Plaintiff as beneficiary of Mrs. Kane's estate and as beneficiary of monies held in various accounts. Defendants actively participated in and/or aided and abetted the fraud by violating the law and ignoring their various duties, including but not limited to, as to Ameriprise:

(i) Section 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-7 thereunder; and (ii) Section 203(e)(6) of the Advisers Act and Section 15(b)(4) of the Securities Exchange Act of 1934 ("Exchange Act"), and as to Salerno: (i) Sections 206(1) and 206(2) of the Advisers Act; (ii) Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and as to the Ameriprise Defendants: (i) the Financial Industry Regulatory Authority's ("FINRA") Know Your Customer, Suitability, Senior Exploitation, and Supervision Rules; (ii) FINRA's Standards of Commercial Honor and Principles of Trade; and (iii) FINRA's Books and Records Requirements, and as to Flaherty, the Rules of Professional Conduct, and as to all Defendants, their fiduciary duties owed to Mrs. Kane.

3.      Two separate financial accounts held by Mrs. Kane were fraudulently transferred to an investment account improperly opened and controlled by Defendants, which fraudulently and wrongfully designated Plaintiff's sister, Bernadette Duffy a/k/a Bernadette Kane ("Bernadette"), as the sole beneficiary. Upon information and belief, Bernadette forged Mrs. Kane's signature on documents transferring funds to the investment account, and Defendants participated in and/or negligently failed to identify the fraud contributing to the exploitation of a dying mother.

4.      Accordingly, as set forth below, Plaintiff seeks to recover amounts held in the investment account at the time of Mrs. Kane's death, treble damages pursuant to Connecticut statute, as well as costs, attorneys' fees and expenses this Court deems appropriate.

## THE PARTIES

5.      Plaintiff is an individual residing at 77 Havemeyer Lane, Unit 210, Stamford, Connecticut 06902 and the rightful beneficiary and co-executor of Mrs. Kane's estate. Plaintiff seeks to recover losses and damages suffered as a result of Defendants' fraudulent and/or negligent

handling of Mrs. Kane's Ameriprise "SPS Advantage" account (account number ending in 2133) (the "Ameriprise Account").

6.      AFS, CRD#: 6363/SEC#: 801-28543,8-16791, is a Delaware limited liability company licensed as a brokerage and investment advisor firm with a principal place of business located at 707 2nd Avenue South, Minneapolis, Minnesota 55402 which, at all relevant times, exercised custody over the Ameriprise Account and which is owned and controlled by AMPF.

7.      AMPF is a Michigan limited liability company and principal shareholder of AFS.

8.      Salerno, CRD#: 2910121, is a broker and investment advisor with offices located at 2507 Post Road, Floor 3, Southport, Connecticut 06890, who has been registered with AFS since 1998. Salerno resides at 128 Gerrish Lane, New Canaan, Connecticut 06840.

9.      Flaherty, Juris No. 411811, is an attorney with Chipman Mazzucco Emerson LLC, located at 900 Main Street South, Suite 102, Southbury, CT 06488 who served as Mrs. Kane's attorney at the time of her death.

## JURISDICTION

10.      Jurisdiction is proper with the Superior Court of the State of Connecticut because: (i) the Defendants maintain offices in Connecticut; (ii) the Defendants conducted operations in Connecticut; (iii) Salerno is a resident of Connecticut; (iv) Flaherty is a resident of Connecticut; (v) Plaintiff is a resident of Connecticut; and (vi) the wrongful conduct at issue occurred in Connecticut.

11.      Venue is proper in the Judicial District of Stamford/Norwalk at Stamford because the Defendants maintain offices and conducted operations in the judicial district.

## FACTUAL ALLEGATIONS

12.     Mrs. Kane and her husband Daniel had three children: Ms. Maguire, Bernadette and Danny, who pre-deceased both parents. In 2004, with the guidance of Attorney Scott Hanula, who had been Mrs. Kane and Daniel's estate planning attorney for many years, the couple executed a will (the "2004 Will"), which left their estate to their three children equally.

13.     After Danny's unexpected death in 2008 and Daniel's passing in 2015, Mrs. Kane executed an updated will on January 20, 2016 (the "2016 Valid Will"). Mrs. Kane left her estate to her two daughters in equal shares and named both daughters as co-executors. See **Exhibit A**. Shortly thereafter, Mrs. Kane relocated from New Jersey to Connecticut.

14.     Mrs. Kane had two financial accounts with Morgan Stanley: (1) an IRA (account number ending in 1737) containing approximately $290,000 at the time of Mrs. Kane's death, which named both Ms. Maguire and Bernadette as equal beneficiaries by an IRA designation of beneficiary dated December 1, 2014 (which Bernadette fraudulently forced or convinced Mrs. Kane to change *just four months before Mrs. Kane's death,* naming Bernadette as the sole beneficiary and Bernadette's daughter as the sole contingent beneficiary) (the "IRA Account"), and (2) an investment account (account number ending in 8737) (the "Investment Account"), which, upon information and belief, also named both sisters as equal beneficiaries.

15.     Mrs. Kane also maintained an investment account with Merrill Lynch, Pierce, Fenner & Smith Incorporated (account number ending in 5961) (the "Merrill Account") containing approximately $209,257.60 prior to being transferred to Mrs. Kane's Ameriprise Account, which, upon information and belief, also named both sisters as equal beneficiaries.

16.     Upon information and belief, Mrs. Kane was frugal in her financial management. In her later years, she utilized social security funds and approximately $1,000 per month from her

IRA Account for living expenses. Her expenses were low, and her monthly rent was approximately $1,500.

17.     Mrs. Kane took an interest in her investments, but trusted her investment advisers to manage her accounts.

18.     For years, Mrs. Kane (and her husband, prior to his death) worked with Raoul Mancini ("Mr. Mancini"), an investment adviser with Morgan Stanley. It was Mr. Mancini who alerted Plaintiff to the possibility of fraud by Defendants and others detailed herein. Mr. Mancini's son, Joseph Mancini, has since taken over management of the family practice, the Mancini Group, at Morgan Stanley.

19.     After Mrs. Kane's move to Connecticut, Bernadette convinced her mother to hire Salerno, Bernadette's investment adviser, who, upon information and belief, met Mrs. Kane in November 2016. As a result, Salerno served as investment adviser and fiduciary to both Mrs. Kane and Bernadette. This conflict of interest allowed Bernadette to collude with Salerno (who, at all relevant times, acted as an agent of Ameriprise) to effectuate her fraud.

### *Mrs. Kane's Estate Planning*

20.     From the time Mrs. Kane executed her 2004 Will, her estate planning remained remarkably consistent. Mrs. Kane wanted her property to be divided equally amongst her surviving children, and she consistently named Ms. Maguire and Bernadette as not only beneficiaries, but also as the co-executors of her estate.

21.     Upon information and belief, Mrs. Kane had also named Ms. Maguire and Bernadette as co-beneficiaries of the IRA Account and the Investment Account.

22.     On or about October 3, 2017, in collusion with Bernadette, Salerno referred Mrs. Kane to Flaherty, an attorney and close friend of Salerno, to dramatically change Mrs. Kane's

estate plan. Mrs. Kane was referred to Flaherty with the intention that Flaherty's title would provide legitimacy to future revisions of Mrs. Kane's will made by Bernadette and Salerno.

23.     On or about December 5, 2017, as a result of the undue influence imposed upon her by Bernadette, Salerno and/or Flaherty, Mrs. Kane inexplicably executed an entirely different will (the "2017 Invalid Will") prepared by Flaherty that included Bernadette as the sole beneficiary and executor, and Bernadette's daughter, Shannon Duffy ("Shannon") as the contingent beneficiary. See **Exhibit B**.

24.     The 2017 Invalid Will refers to Shannon as "my daughter" despite Shannon being Mrs. Kane's granddaughter, evidencing Mrs. Kane's intentions to bequeath her property to her two daughters.

25.     Upon information and belief, the 2017 Invalid Will either (a) included Ms. Maguire as a beneficiary at the time of execution and was fraudulently revised by Flaherty, Salerno and Bernadette after Mrs. Kane's death to designate Bernadette as sole beneficiary and sole executor; or (b) was executed by Mrs. Kane as a result of undue influence or coercion, with the belief that Ms. Maguire was included as a beneficiary.

26.     The fraudulent amendments to the 2017 Invalid Will are evidenced by, among other things: (i) revisions to the 2016 Valid Will made in Bernadette's handwriting; (ii) Mrs. Kane's falsified initials on the pages that Bernadette amended; (iii) Bernadette's surname change to "Kane" at the time Bernadette still used the surname "Duffy"; (iv) Salerno's dual representation of Bernadette and Mrs. Kane; (v) the friendship between Salerno and Flaherty and improper sharing of confidential information between the two; (vi) the fact that it was Salerno who notified Flaherty of Mrs. Kane's death and that Bernadette wanted him to settle Mrs. Kane's estate; and (vii) Flaherty's intentional misrepresentations to the Shelton, CT Probate Court ("Probate Court")

and Ms. Maguire that Mrs. Kane had no assets subject to probate at the time of her death.

27.     Ms. Kane's hand-written notes dated November 21, 2017 ("Specific Bequests") (just two weeks before she supposedly executed the 2017 Invalid Will) identify specific items of jewelry to be left to certain individuals at the time of her death. Of the seven items of jewelry identified by Mrs. Kane in her handwritten notes, two pieces were bequeathed to Bernadette and two pieces were bequeathed to Plaintiff (including diamond earrings and an Irish pendent), reflecting Mrs. Kane's intent of leaving to her two daughters equally.

28.     In her Specific Bequests, Mrs. Kane notes that all remaining jewelry was to be distributed to "whoever." Upon information and belief, Mrs. Kane intended her surviving family to distribute her remaining jewelry (valued at approximately $20,000 - $30,000) as mutually agreed. Upon information and belief, Bernadette and/or her children received all remaining jewelry.

29.     For some time prior to her death, Mrs. Kane suffered from significant health issues that impacted her physical and mental well-being. Her health issues became exacerbated after she moved to Connecticut. Around this time, with the aid of Flaherty and Salerno, Bernadette tricked Mrs. Kane into excluding Ms. Maguire from receiving property that Mrs. Kane had intended for her children when she passed, and/or forged documents to achieve that goal.

30.     Mrs. Kane was highly susceptible to such influence, due in part to her advanced age and physical and mental infirmity.

### *The Fraudulent Opening*
### *of the Ameriprise Account*

31.     After earning Mrs. Kane's trust in or around late November 2016, Salerno collaborated with Bernadette by manipulation and/or fraud to wrongfully establish, on behalf of Mrs. Kane, the Ameriprise Account naming Bernadette as the sole beneficiary.

32.     A general intake "New Business Setup Confirmation" form (the "Setup Form") was prepared by Salerno. See **Exhibit C**.

33.     Defendants were either willfully aware of or willfully ignored red flags in the Setup Form, including but not limited to: (i) Mrs. Kane's signature is apparently forged and/or clearly copied from an outside source; (ii) the account was set up with Moderate/Aggressive Risk Tolerance with "Growth" as the "First Investment Objective," despite Mrs. Kane's investment profile given her advanced age (over 80 at the time) and lack of investment experience; (iii) the Setup Form improperly uses Mrs. Kane's date of birth rather than the date of her supposed (and forged) signature; and (iv) no required TOD designation was executed.

34.     A separate time of death designation form, referenced in the Setup Form and required by industry standards, was never completed. The Setup Form prepared by Ameriprise and delivered to Mrs. Kane by Salerno references a separate "TOD registration," which was never completed. A section entitled "Transfer on Death Account Acknowledgments" states in part:

> I, the owner of the listed account(s) **desire to establish a Transfer on Death (TOD) designation** pursuant to the Minnesota Uniform TOD Security Registration Act (the Act). Upon my death (or upon the death of the last survivor of us), Ameriprise Financial, Inc., Ameriprise Certificate Company, Ameriprise Financial Services, Inc., and American Enterprise Investment Services Inc. (individually or collectively "company") shall distribute my account according to the terms and conditions of this Agreement, filed at Ameriprise Financial, Inc.'s principal place of business in Minneapolis. Minnesota. **In consideration of company acceptance of my TOD registration**, I agree as follows:

35.     Ameriprise procedures require a separate TOD registration form to be completed. Contrary to standard practices and references in the Setup Form, a separate TOD registration form was never delivered to Mrs. Kane. Instead, Defendants purposefully relied upon an inconclusive mention of Bernadette in the Setup Form as the supposed sole beneficiary of the Ameriprise Account. Defendants failed to apprise Mrs. Kane of the consequences of such a designation as

contrary to her long-standing estate plan, which failure was made all the more egregious by Defendants' failure to provide Mrs. Kane with the required TOD registration.

36.     Salerno has a history of deceiving clients. On two separate occasions, unrelated clients of Salerno have alleged similar misrepresentations or deceit. Notably, on one such occurrence it was alleged that the signature of Salerno's client had been forged on an application, much like the forgery Defendants allowed here.

### *The Fraudulent Transfers of Mrs. Kane's Accounts*

37.     On or about November 30, 2016, the entire balance of the Merrill Account containing approximately $209,257.60 was fraudulently transferred to the Ameriprise Account, documented by a transfer form ("Transfer Form"). See **Exhibit D**.

38.     Defendants were either willfully aware of, or willfully ignored, red flags in the Transfer Form, including but not limited to: (i) Ms. Kane's signature is clearly copied from an outside source; and (ii) the Transfer Form improperly uses Ms. Kane's date of birth rather than the date of her supposed (and forged) signature.

39.     Despite the obvious evidence of forgery, The Ameriprise Defendants purposefully proceeded with the filing and transfer of funds.

40.     On or about February 20, 2018, less than one year before Mrs. Kane's passing, the entire balance of the Investment Account containing approximately $70,582.06 was transferred to the Ameriprise Account pursuant to an "Account Transfer and Direct Rollover" form prepared by Ameriprise ("Rollover Form"). See **Exhibit E**.

41.     Defendants were either willfully aware of, or willfully ignored, red flags in the Rollover Form, including but not limited to: (i) Ms. Kane's signature appears to have been forged;

and (ii) the handwriting on the Rollover Form is patently distinct from that of Mrs. Kane's typical writings.

42.     Approximately four months before Mrs. Kane's death, as a result of the undue influence by Bernadette and Defendants, Mrs. Kane supposedly changed the beneficiaries on her IRA Account to name Bernadette as sole beneficiary with Bernadette's daughter Shannon Duffy as the contingent beneficiary.

43.     At the time of Mrs. Kane's passing, the Ameriprise Account contained approximately $301,617.84, half of which rightfully belongs to Ms. Maguire pursuant to the 2016 Valid Will and/or the valid 2014 beneficiary designations on the IRA Account and Investment Account.

44.     On or prior to Ms. Kane's passing on January 22, 2019, despite the red flags and the lack of a proper beneficiary form, funds in the Ameriprise Account were wrongfully transferred to Bernadette in violation of numerous FINRA regulations and federal law.

### *Ameriprise's Violations of Federal Law and FINRA Rules*

45.     As an investment adviser and a broker-dealer, Ameriprise has various supervisory responsibilities under the Exchange Act and Advisers Act. Ameriprise is required by law to reasonably supervise Salerno to prevent Salerno's violations of the federal securities law, and is also required to adopt and implement written compliance policies and procedures to prevent its advisers (like Salerno) from engaging in fraudulent activity.

46.     On Ameriprise's website at the time of this Complaint, "Signs of financial exploitation" are listed to include: (i) abrupt changes in a will, an account's beneficiaries or other financial accounts; and (ii) evidence of forgery for financial transactions or for the titles of his/her possessions or property.

47.     Despite Ameriprise's responsibilities to adopt written policies designed to prevent violation of the Advisers Act by Salerno and supervise the activities of Salerno pursuant to Rule 206(4)-7 of the Advisers Act, Section 203(e)(6) of the Advisers Act, Section 15(b)(4) of the Exchange Act, and FINRA Rules 2010 and 3110, at no point did Ameriprise recognize or flag these transactions despite Salerno's unethical conduct and facilitation of the fraud alleged herein. Through their willful failures and participation in the financial exploitation of Mrs. Kane, the Ameriprise Defendants wrongfully benefitted through service and transaction fees.

48.     Ameriprise has a history of failing to properly supervise its advisers and allowing forgery, such as is alleged here. In March 2013, FINRA announced that it would fine Ameriprise Financial Services, Inc., an affiliate of Ameriprise, $750,000 for failing to have reasonable supervisory systems in place to monitor wire transfer requests and the transmittal of customer funds to third-party accounts. An agent of Ameriprise had converted approximately $790,000 from two customers over a four-year period by forging their signatures on wire transfer requests and disbursing the funds to bank accounts she controlled.

49.     In September 2016, FINRA announced that it would fine Ameriprise $850,000 for failing to detect the conversion of more than $370,000 from five customer brokerage accounts by one of its registered representatives. The conversion went undetected for two years because Ameriprise failed to establish and enforce a supervisory system reasonably designed to adequately monitor the transmittal of funds from customer accounts to third parties, including those controlled by registered representatives of the firm.

50.     In August 2018, the Securities and Exchange Commission ("SEC") ordered Ameriprise to pay $4.5 million to settle charges that it had failed to safeguard investor assets from

theft by its representatives, investment advisors like Salerno. Those charges involved forging client documents, as alleged here.

51.     In Salerno's dealings with Mrs. Kane and at all times discussed, and relevant to the claims asserted herein, Salerno acted within the scope of his authority as an agent of Ameriprise.

***Evidence of Collusion and Defendants'***
***Fraudulent Concealment of Their Wrongdoing***

52.     Upon Mrs. Kane's passing on January 22, 2019, Plaintiff contacted Bernadette to coordinate the settlement of the estate, as Plaintiff and Bernadette were co-executors under the 2016 Valid Will. It was at that time that Bernadette informed Plaintiff that the estate had already been settled and that no property remained undistributed.

53.     Bernadette told Plaintiff, upon their mother's death, that a new will had purportedly been prepared by Flaherty and executed on December 5, 2017, supposedly naming Bernadette as the sole beneficiary and the sole executor of the estate, and supposedly naming another "daughter" (Shannon Duffy, who is Bernadette's daughter) as the contingent beneficiary. Plaintiff also learned at that time that Bernadette had destroyed Mrs. Kane's files, including but not limited to the 2016 Valid Will.

54.     Reflective of Defendants' wrongdoing and collusion, on February 4, 2019, *Salerno* emailed Flaherty that Mrs. Kane had passed and forwarded the death certificate to Flaherty. Salerno told Flaherty that Bernadette wanted Flaherty to settle Mrs. Kane's estate.

55.     On February 11, 2019, Salerno and Flaherty again exchanged emails wherein Salerno wrote to Flaherty that Mrs. Kane "had an IRA that Bernadette was the sole beneficiary of value $290K." There was no reason for Salerno to know of Mrs. Kane's IRA Account held at Morgan Stanley, and no reason for Salerno to know that the beneficiary form on that account had just been (fraudulently) changed five months earlier.

56.     Flaherty responded to Salerno on February 11, 2019: "Looks like everything had a beneficiary or joint owner then. We should be able to avoid probate all together. Thanks Doctor!" Salerno responded back "great."

57.     In   February 2019, Plaintiff contacted both Flaherty and Salerno for more information pertaining to Mrs. Kane's estate.

58.     Salerno told Plaintiff that she would never receive any information about the Ameriprise Account, that the funds in the Ameriprise Account had already been transferred to Bernadette, and that the records relating to the Ameriprise Account were "gone."

59.     Flaherty told Plaintiff that Mrs. Kane "had no money" when she died. When Plaintiff asked Flaherty about the Investment Account, Flaherty asked Plaintiff: "how do you know about that?" Flaherty thereafter became reluctant to provide information to Plaintiff, providing a copy of the 2017 Invalid Will to her only weeks later.

60.     The fact that both Flaherty and Salerno knew by February 2019 of Plaintiff's concerns regarding the estate makes their actions thereafter all the more fraudulent.

61.     On March 15, 2019, *knowing of Plaintiff's objections to the 2017 Invalid Will* and *knowing that Plaintiff had questioned the creation of and distributions from the Ameriprise Account*, and presumably with knowledge of Mrs. Kane's handwritten notes regarding her jewelry, Flaherty fraudulently filed the 2017 Invalid Will with the Probate Court and, upon information and belief, misrepresented to the court that "there are no assets to be administered."

62.     Flaherty later admitted to Plaintiff that he did not look at the beneficiary forms before he delivered them to the Probate Court.

63.     On April 4, 2019, Salerno emailed the Setup Form to Flaherty and wrote:

Give me give me give me.

The only thing I see is that she put her Date of Birth instead of the date she signed. If you look at when I signed and dated was the same day she signed. Not sure if that will create an issue.

Flaherty responded back to Salerno the following: "Lol. I know. I'm so friggin demanding! Thanks pal."

64. Although Plaintiff had asked Defendants for information since February 2019, it was not until April 5, 2019 that Flaherty emailed the Ameriprise Setup Form to Plaintiff.

65. On August 9, 2019, Flaherty emailed to Salerno: "Hey Doctor, Can I get a print out of the holdings in Agnes Kane's accounts, as of the date of her death (1/22/19)?" and Salerno responded back to Flaherty: "Doctor when I go to run the report on 1/22/19 it shows up as 0. If I run it on the 21st see attached report. I can call home office to find out how to get it for the 22nd on Monday." Flaherty responded back to Salerno: "LOL. No worries. I'm certain this should be fine. Thanks Doctor!"

66. After being made aware of the Ameriprise Account and subsequent transfers, Plaintiff contacted Mr. Mancini, who alerted Plaintiff to the potential fraud effectuated by Defendants and Bernadette.

67. In August 2019, Plaintiff contacted the Fairfield Police Department to discuss the seemingly fraudulent activities of Defendants. Officer Lisa Burbidge contacted Ameriprise and reported back to Plaintiff that Lila Reiling, Legal Service Expert for Ameriprise ("Ms. Reiling") had informed her that documents relating to the Ameriprise Account had been *shredded or destroyed shortly after Mrs. Kane's death*.

68. The Ameriprise Defendants' destruction of the Ameriprise Account documents was willful, in violation of applicable FINRA regulations, and fraudulently concealed Defendant's wrongdoing.

69.     Upon information and belief, Bernadette colluded with Flaherty and Salerno to: (i) doctor the Setup Form, Transfer Form and Rollover Form in order to transfer funds belonging to Plaintiff into the Ameriprise Account: (ii) fraudulently replace or amend the 2016 Valid Will; and (iii) force or convince Mrs. Kane to replace Plaintiff as a beneficiary of the IRA Account. Upon information and belief, at no point did Ameriprise recognize or flag these transactions despite Salerno's clear unethical conduct and circumvention of Ameriprise's policies.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Statutory Theft pursuant to Conn. Gen. Stat. §52-564*
*(against the Ameriprise Defendants)*

70.     The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

71.     The Ameriprise Defendants, with the intent to deprive Plaintiff of her property and/or to appropriate same to Bernadette, wrongfully took, obtained and/or withheld money from Plaintiff under false pretenses, in violation of Conn. Gen. Stat. § 53-564, which provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

72.     As Mrs. Kane's personal investment adviser, the Ameriprise Defendants exercised control over funds in the Ameriprise Account.

73.     The Ameriprise Defendants were actively involved with the theft from Plaintiff by virtue of their (i) preparation and filing of the falsified Setup Form and Transfer Form; (ii) filing of the falsified Rollover Form; (iii) failure to provide a beneficiary designation form to Mrs. Kane; (iv) referral of Mrs. Kane to Salerno's friend Flaherty to fraudulently effectuate dramatic changes to Mrs. Kane's estate plan; (v) notification to Flaherty of Mrs. Kane's death; (vi) recognition that

the Setup Form was not correct; (vii) advising Bernadette to influence Mrs. Kane to change the beneficiary of the IRA Account; (viii) immediate transfer of funds in the Ameriprise Account to Bernadette on the date of Mrs. Kane's death, without a beneficiary designation form; and (ix) fraudulent concealment of their theft by intentionally and wrongfully destroying documentation relating to the Ameriprise Account.

74. The Ameriprise Defendants' wrongful and intentional actions were intended to deprive Plaintiff of property to which Plaintiff is rightfully entitled, for the unlawful purpose of appropriating such property to Bernadette, and were knowingly concealed from Plaintiff.

75. As a result of the Ameriprise Defendants' actions, property that should have remained in Mrs. Kane's estate and transferred to Plaintiff at the time of Mrs. Kane's passing through probate, and/or property in the Investment Account, IRA Account, and/or Merrill Account that should have transferred to Plaintiff at the time of Mrs. Kane's passing, was stolen from Plaintiff and unlawfully appropriated to Bernadette.

76. Accordingly, Ms. Maguire has been damaged in an amount to be determined at trial.

77. At the time of Mrs. Kane's death, the Ameriprise Account contained approximately $301,617.84, half of which rightfully belongs to Ms. Maguire.

78. At the time of Mrs. Kane's death, the IRA Account contained approximately $290,000.00, half of which rightfully belongs to Ms. Maguire.

79. Pursuant to Conn. Gen. Stat § 52-564, the Ameriprise Defendants must pay to Ms. Maguire treble her damages, an amount of at least $887,426.76, the precise amount to be determined at trial.

## SECOND CAUSE OF ACTION
*Conspiracy to Commit Statutory Theft*
*(against all Defendants)*

80.     The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

81.     The Defendants conspired with one another and/or Bernadette to deprive Plaintiff of her property and/or to appropriate same to Bernadette under false pretenses, in violation of Conn. Gen. Stat. § 53-564, which conspiracy was furthered by (i) forgery or coercion in the execution of the Setup Form and Transfer Form; (ii) failing to provide Mrs. Kane with a required TOD registration form; (iii) failing to place a hold on Mrs. Kane's account notwithstanding highly suspicious activity; (iv) colluding with Flaherty to falsify the 2017 Invalid Will; (v) fraudulently selling securities and distributing the funds to Bernadette shortly after Mrs. Kane's death without a TOD registration having been completed by Mrs. Kane and without placing a hold on Mrs. Kane's account due to suspicious activity; and (vi) actively concealing the conspiracy by refusing to provide Plaintiff, the rightful co-executor of Mrs. Kane's estate and the rightful beneficiary of monies held by Defendants, with requested documents and information and/or destroying documents.

82.     The Defendants acted with the intent to deprive Plaintiff of monetary amounts to which the Plaintiff is rightfully entitled.

83.     The Defendants committed overt acts in furtherance of their conspiracy, including but not limited to: (i) filing/accepting the forged and incorrect Setup Form and forged and incorrect Transfer Form; (ii) filing the falsified Rollover Form; (iii) failing to provide Mrs. Kane with a required beneficiary designation form; (iv) referring Mrs. Kane to Salerno's friend Flaherty to fraudulently effectuate dramatic changes to Mrs. Kane's estate plan; (v) failing to place a hold on

Mrs. Kane's account notwithstanding highly irregular and suspicious activity; (vi) falsifying the 2017 Invalid Will; (vii) fraudulently selling securities and distributing the funds to Bernadette upon Mrs. Kane's death without a beneficiary designation form having been completed by Mrs. Kane; (viii) advising Bernadette to influence Mrs. Kane to change the beneficiary of the IRA Account; (ix) making misrepresentations to the Probate Court regarding the validity of the 2017 Invalid Will and the estate assets; (x) refusing to provide information to Plaintiff as the rightful co-executor of Mrs. Kane's estate and co-beneficiary of the monies misappropriated from Plaintiff; and (xi) destroying documentary evidence of Defendants' wrongdoing.

84.    As a result, property that should have remained in Mrs. Kane's estate and/or the Investment Account and/or the Merrill Account and/or the IRA Account and transferred to Plaintiff at the time of Mrs. Kane's passing, was transferred to either directly to Bernadette or to the Ameriprise Account that wrongfully designated Bernadette as the sole beneficiary.

85.    Accordingly, Ms. Maguire has been damaged in an amount to be determined at trial.

86.    As a result of Defendants' conspiracy to commit statutory theft, Ms. Maguire has been deprived of monetary amounts to which she is rightfully entitled.

### THIRD CAUSE OF ACTION
*Aiding and Abetting Statutory Theft*
*(against All Defendants)*

87.    The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

88.    The Defendants aided and abetted Bernadette's statutory theft.

89.    The Defendants knew or should have known that Bernadette was committing statutory theft against Ms. Maguire.

90.     The Defendants knew or should have known that the actions of Bernadette would amount to theft of Ms. Maguire's property.

91.     The Defendants knowingly provided substantial assistance to Bernadette in her theft against Ms. Maguire by: (i) filing/accepting the forged and incorrect Setup Form and forged and incorrect Transfer Form; (ii) filing the falsified Rollover Form; (iii) failing to provide Mrs. Kane with a required beneficiary designation form; (iv) referring Mrs. Kane to Salerno's friend Flaherty to fraudulently effectuate dramatic changes to Mrs. Kane's estate plan; (v) failing to place a hold on Mrs. Kane's account notwithstanding highly irregular and suspicious activity; (vi) falsifying the 2017 Invalid Will; (vii) fraudulently selling securities and distributing the funds to Bernadette upon Mrs. Kane's death without a beneficiary designation form having been completed by Mrs. Kane; (viii) advising Bernadette to influence Mrs. Kane to change the beneficiary of the IRA Account; (ix) making misrepresentations to the Probate Court regarding the validity of the 2017 Invalid Will and the estate assets; (x) refusing to provide information to Plaintiff as the rightful co-executor of Mrs. Kane's estate and co-beneficiary of the monies misappropriated from Plaintiff; and (xi) destroying documentary evidence of Defendants' wrongdoing.

92.     As a result of Defendants' aiding and abetting Bernadette's theft, Ms. Maguire has been deprived of monetary amounts to which she is rightfully entitled, and is entitled to treble her damages and/or punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
*Forgery pursuant to Conn. Gen. Stat. § 52-565*
*(against all Defendants)*

93.     The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

94.    Under Connecticut's civil forgery statute, "any person who falsely makes, alters, forges or counterfeits any document, or knowingly utters, as true, any document falsely made, altered, forged or counterfeited, shall pay double damages to any party injured thereby." Conn. Gen. Stat. § 52-565.

95.    The Setup Form contained a forged or counterfeited signature.

96.    The Transfer Form contained a forged or counterfeited signature.

97.    The Rollover Form contained falsified information.

98.    The 2017 Invalid Will contains falsified revisions.

99.    The Ameriprise Defendants intentionally prepared and filed the forged Setup Form and Transfer Form for the purpose of appropriating to Bernadette amounts held in the Ameriprise Account and Merrill Account.

100.    The Ameriprise Defendants intentionally filed the falsified Rollover Form for the purpose of appropriating amounts held in the Investment Account to Bernadette.

101.    Flaherty prepared the 2017 Invalid Will and filed the 2017 Invalid Will with the Probate Court.

102.    Defendants knowingly uttered as true the IRA Designation of Beneficiary Form for the IRA Account which was falsely made, altered, forged or counterfeited just a few months before Mrs. Kane's death.

103.    At the time of Mrs. Kane's death, the Ameriprise Account contained approximately $301,617.84, half of which rightfully belongs to Ms. Maguire.

104.    At the time of Mrs. Kane's death, the IRA Account contained approximately $290,000.00, half of which rightfully belongs to Ms. Maguire.

105.    Plaintiff was injured by the forgery in an amount of at least $295,808.92, the precise amount to be determined at trial.

106.    Pursuant to Conn. Gen. Stat § 52-565, Defendants must pay to the Plaintiff double her damages, an amount equal to at least $591,617.84, the precise amount to be determined at trial.

## FIFTH CAUSE OF ACTION
*Conspiracy to Commit Forgery*
*(against All Defendants)*

107.    The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

108.    The Defendants conspired with one another and/or Bernadette to commit forgery in violation of Conn. Gen. Stat. § 52-565, which conspiracy was furthered and/or actively concealed by the following overt acts and concealment: (i) filing/accepting the forged and incorrect Setup Form and forged and incorrect Transfer Form; (ii) filing the falsified Rollover Form; (iii) failing to provide Mrs. Kane with a required beneficiary designation form; (iv) referring Mrs. Kane to Salerno's friend Flaherty to fraudulently effectuate dramatic changes to Mrs. Kane's estate plan; (v) failing to place a hold on Mrs. Kane's account notwithstanding highly irregular and suspicious activity; (vi) falsifying the 2017 Invalid Will; (vii) fraudulently selling securities and distributing the funds to Bernadette upon Mrs. Kane's death without a beneficiary designation form having been completed by Mrs. Kane; (viii) advising Bernadette to influence Mrs. Kane to change the beneficiary of the IRA Account; (ix) making misrepresentations to the Probate Court regarding the validity of the 2017 Invalid Will and the estate assets; (x) refusing to provide information to Plaintiff as the rightful co-executor of Mrs. Kane's estate and co-beneficiary of the monies misappropriated from Plaintiff; and (xi) destroying documentary evidence of Defendants' wrongdoing.

109.    Defendants committed overt acts in furtherance of their conspiracy, including but not limited to: (i) filing/accepting the forged and incorrect Setup Form and forged and incorrect Transfer Form; (ii) filing the falsified Rollover Form; (iii) failing to provide Mrs. Kane with a required beneficiary designation form; (iv) referring Mrs. Kane to Salerno's friend Flaherty to fraudulently effectuate dramatic changes to Mrs. Kane's estate plan; (v) failing to place a hold on Mrs. Kane's account notwithstanding highly irregular and suspicious activity; (vi) falsifying the 2017 Invalid Will; (vii) fraudulently selling securities and distributing the funds to Bernadette upon Mrs. Kane's death without a beneficiary designation form having been completed by Mrs. Kane; (viii) advising Bernadette to influence Mrs. Kane to change the beneficiary of the IRA Account; (ix) making misrepresentations to the Probate Court regarding the validity of the 2017 Invalid Will and the estate assets; (x) refusing to provide information to Plaintiff as the rightful co-executor of Mrs. Kane's estate and co-beneficiary of the monies misappropriated from Plaintiff; and (xi) destroying documentary evidence of Defendants' wrongdoing.

110.    Defendants acted with the intent of committing forgery, and Defendants' conspiracy did in fact result in forgery.

111.    As a result of Defendants' conspiracy to commit forgery, Ms. Maguire has been injured in an amount of at least $295,808.92, the precise amount to be determined at trial.

112.    Pursuant to Conn. Gen. Stat § 52-565, Defendants must pay to Ms. Maguire double her damages, an amount equal to at least $591,617.84, the precise amount to be determined at trial.

### SIXTH CAUSE OF ACTION
*Aiding and Abetting Forgery*
*(against All Defendants)*

113.    The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

114.    The Setup Form and Transfer Form were forged by Bernadette in violation of Conn. Gen. Stat. § 52-565.

115.    The transfer of beneficiary of the IRA Account after 2014 was the result of forgery or coercion facilitated by Defendants.

116.    Defendants knowingly aided and abetted Bernadette's forgery and provided substantial assistance to Bernadette's forgery by: (i) filing/accepting the forged and incorrect Setup Form and forged and incorrect Transfer Form; (ii) filing the falsified Rollover Form; (iii) failing to provide Mrs. Kane with a required beneficiary designation form; (iv) referring Mrs. Kane to Salerno's friend Flaherty to fraudulently effectuate dramatic changes to Mrs. Kane's estate plan; (v) failing to place a hold on Mrs. Kane's account notwithstanding highly irregular and suspicious activity; (vi) falsifying the 2017 Invalid Will; (vii) fraudulently selling securities and distributing the funds to Bernadette upon Mrs. Kane's death without a beneficiary designation form having been completed by Mrs. Kane; (viii) advising Bernadette to influence Mrs. Kane to change the beneficiary of the IRA Account; (ix) making misrepresentations to the Probate Court regarding the validity of the 2017 Invalid Will and the estate assets; (x) refusing to provide information to Plaintiff as the rightful co-executor of Mrs. Kane's estate and co-beneficiary of the monies misappropriated from Plaintiff; and (xi) destroying documentary evidence of Defendants' wrongdoing.

117.    As a result of Defendants' aiding and abetting Bernadette's forgery Ms. Maguire has been injured in an amount of at least $295,808.92, the precise amount to be determined at trial..

## SEVENTH CAUSE OF ACTION
*Fraud*
*(against All Defendants)*

118.    The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

119.    Defendants defrauded Plaintiff by making fraudulent misrepresentations to Mrs. Kane and fraudulent misrepresentations to Plaintiff, and by fraudulently concealing their actions from Plaintiff.

120.    Beginning on or about November 22, 2016, upon preparing and filing the Setup Form and until the transfer to Bernadette of funds held in the Ameriprise Account, The Ameriprise Defendants knowingly and intentionally made material false representations to Mrs. Kane that she had correctly executed the Setup Form, Transfer Form and Rollover Form and that Mrs. Kane's daughters were co-beneficiaries under the Ameriprise Account.

121.    Defendants knew, or should have known by virtue of Mrs. Kane's representations, her 2014 beneficiary designations and the 2016 Valid Will, that Mrs. Kane intended, upon her death, for Plaintiff to receive funds as a co-beneficiary under the Ameriprise Account, the IRA Account and/or the 2016 Valid Will.

122.    Defendants intended for Mrs. Kane to rely on their misrepresentations, and Mrs. Kane did so rely, by virtue of Defendants' status as Mrs. Kane's personal investment adviser and attorney, respectively.

123.    Despite their fiduciary duties owed to Mrs. Kane and to Ms. Maguire as Mrs. Kane's rightful co-executor and rightful co-beneficiary, Defendants fraudulently concealed their unlawful wrongdoing from Plaintiff and the Probate Court. Defendants also improperly and illegally destroyed documents to conceal their fraudulent activity.

124.    Defendants made numerous fraudulent misrepresentations to Plaintiff that there were no assets in Mrs. Kane's estate, that the 2017 Invalid Will was valid, and that the Setup Form, Transfer Form were valid, and that Plaintiff was not a beneficiary of the IRA Account.

125.    Plaintiff relied on Defendants' misrepresentations by attempting to obtain documents on her own, attempting to obtain information on her own, obtaining counsel to obtain documents and information, delaying the commencement of this action, and commencing this action.

126.    As a direct and proximate result of Defendants' fraudulent actions, Ms. Maguire, as rightful beneficiary of Mrs. Kane's estate and/or of Mrs. Kane's investment accounts, has and continues to suffer damages in an amount no less than $295,808.92, said damages to be proven at trial.

## EIGHTH CAUSE OF ACTION
*Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")*
*(against all Defendants)*

127.    The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

128.    Defendants' conduct constitutes racketeering as set forth in 18 U.S.C. § 1962(c). Specifically, "racketeering" has been defined to include wire fraud, or committing fraud by means of electronic transmissions. 18 U.S.C. § 1961.  Defendants engaged in multiple instances of wire fraud or fraud by means of electronic transmissions through the filing/acceptance of documents containing fraudulent signatures to form and fund the Ameriprise Account, through the unlawful disbursement of funds from the Ameriprise Account to Bernadette, and through misrepresentations made to Plaintiff and to the Probate Court.

129. As detailed below, Plaintiff alleges three different causes of action for federal RICO violations. In summary: (i) Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity; (ii) Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity; and (iii) Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

130. Each Respondent, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

131. Defendants' activities include at least ten acts of racketeering activity from 2016 through 2019. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

132. One such act took place on or about November 22, 2016 when Defendants, in furtherance of the activities, purpose and scheme, falsely and fraudulently prepared and filed the Setup Form using interstate wires and/or electronic transmissions.

133. Beginning on or around October 21, 2016 and continuing through the transfer to Bernadette of funds held in Mrs. Kane's Ameriprise Account, each Respondent conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

134. On or about November 30, 2016, Defendants, in furtherance of the activities, purpose and scheme, falsely and fraudulently prepared and filed the Transfer Form using interstate wires and/or electronic transmissions.

135. On or about October 3, 2017, Salerno (then both Bernadette's and Mrs. Kane's

investment advisor) referred Mrs. Kane to his Salerno's friend Flaherty to effect the fraudulent changes in Mrs. Kane's will.

136.     On or about December 5, 2017, in furtherance of the activities, purpose and scheme, Flaherty falsely and fraudulently prepared the Invalid Will.

137.     On or about February 20, 2018, Defendants, in furtherance of the activities, purpose and scheme, falsely and fraudulently prepared and filed the Rollover Form using interstate wires and/or electronic transmissions.

138.     On or about January 22, 2019, Defendants, in furtherance of the activities, purpose and scheme, falsely and fraudulently transferred the balance of Mrs. Kane's account to Bernadette, on the date of Mrs. Kane's death and without any proper TOD form having been completed by Mrs. Kane, using interstate wires and/or electronic transmissions.

139.     On or about February 4, 2019, Salerno, in furtherance of the activities, purpose and scheme, used interstate wires and/or electronic transmissions to inform Flaherty that Mrs. Kane had passed and that Bernadette wanted Flaherty to settle Mrs. Kane's estate.

140.     On February 11, 2019, in furtherance of Defendants' scheme, Salerno and Flaherty used interstate wires and/or electronic transmissions to communicate and conclude that they could "avoid probate all together."

141.     On March 15, 2019, in furtherance of Defendants' scheme, knowing of Plaintiff's objections to the 2017 Invalid Will and knowing that Plaintiff had questioned the creation of and distributions from the Ameriprise Account, Flaherty fraudulently filed the 2017 Invalid Will with the Probate Court and, upon information and belief, misrepresented to the court that "there are no assets to be administered."

142.     On April 4, 2019, in furtherance of Defendants' scheme, Salerno and Flaherty used

interstate wires and/or electronic transmissions to communicate regarding a deficiency in the Setup Form.

143.    At all times discussed herein, Defendants were involved in a plan to scheme or defraud; had the intent to defraud and willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

144.    On or about January 22, 2019, Defendants, in furtherance of the activities, purpose and scheme, falsely and fraudulently disbursed funds from the Ameriprise Account to Bernadette using interstate wires and/or electronic transmissions.

145.    On or about February 22, 2019, Defendants, in furtherance of the activities, purpose and scheme, using interstate wires and/or electronic transmissions, refused to provide any information to Plaintiff about her mother's account and told Plaintiff that she would "never" get any information about the account and that the funds held under Mrs. Kane's account had already been transferred to Bernadette.

146.    To achieve their common goals, Defendants knowingly and willfully concealed from the public and Plaintiff the unlawfulness of their conduct.

147.    As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Ms. Maguire has been injured, causing Ms. Maguire to suffer monetary damages in an amount not less than $295,808.92, said damages to be proven at trial.

148.    18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …."

149.    Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Ms. Maguire for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees, an amount equal to no less than $887,426.76.

### NINTH CAUSE OF ACTION
*Violation of Connecticut Unfair Trade Practices Act ("CUTPA")*
*(against all Defendants)*

150.    The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

151.    The Defendants' following actions, among others, are unfair and oppressive and violate the public policy against unfair and deceptive business practices.

152.    The following actions of the Ameriprise Defendants, among others, are unfair and oppressive and violate the public policy against unfair and deceptive business practices: (i) conspiring with Bernadette to forge Mrs. Kane's signature and/or deceive Mrs. Kane in connection with the establishment and funding of the Ameriprise Account; (ii) conspiring with Bernadette to forge Mrs. Kane's signature and/or deceive Mrs. Kane in connection with the designation of Bernadette as the sole beneficiary of the Ameriprise Account, the IRA Account, and the 2017 Invalid Will; (iii) failing to inform Mrs. Kane of the conflict of interest arising from Salerno's dual representation of Mrs. Kane and Bernadette; (iv) failing to include a separate beneficiary designation form in the initial setup process for the establishment of the Ameriprise Account; (v) referring Mrs. Kane to Flaherty and falsifying and/or forging the 2017 Invalid Will; (vi) failing to supervise Salerno in violation of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder, and Section 203(e)(6) of the Advisers Act and Section 15(b)(4) of the Exchange Act; (vii) violations of numerous FINRA Rules; (viii) violation of Section 80b-6 of the Advisers Act through

engaging in practices that operate as a fraud or deceit upon a client; (ix) purposefully destroying records relating to customer account ledgers; (x) violation of FINRA Rule 2090 in connection with their failure to use reasonable diligence to know and retain the essential facts concerning Mrs. Kane (including her advanced age of 82, her risk tolerance, her need for liquidity, her time horizon, and her estate planning, which included leaving her assets to each of her daughters equally, and the red flags raised by the Setup Form), in order to effectively service the account and comply with applicable laws, regulations and rules; (xi) violation of FINRA Rule 2111 in connection with their failure to adequately consider Mrs. Kane's individual financial situation and needs by recommending an aggressive investment strategy for an 82-year-old woman (in 2016 when the Ameriprise Account was established) with limited assets and limited investment experience; (xii) violation of FINRA Rule 2020 by colluding with Bernadette to fraudulently induce Mrs. Kane to establish the Ameriprise Account naming Bernadette as its sole beneficiary, by fraudulently failing to provide Mrs. Kane with a required beneficiary designation form, and by fraudulently selling securities and distributing the funds to Bernadette immediately upon Mrs. Kane's death without a beneficiary registration form having been completed by Mrs. Kane; (xiii) various violations of FINRA Rule 2010 by: (a) failing to monitor the activities of Salerno; (b) failing to ensure procedures were adhered to that are designed to prevent the very exploitation of customers that occurred here; (c) failing to ensure that the designation of beneficiaries was understood by Mrs. Kane and confirmed by a TOD registration; (d) accepting clearly fraudulent and deficient documentation to establish and fund Mrs. Kane's Ameriprise Account; (e) distributing funds held in the Ameriprise Account to Bernadette without any hold placed on the disbursement of funds; and (f) referring Mrs. Kane to Salerno's friend Flaherty to further effectuate the wrongful conduct;

(xiv) violation of FINRA Rule 2165(b) by failing to place a hold on Mrs. Kane's account despite clear evidence of forged documents, the abrupt and significant modification of Mrs. Kane's estate planning, an unsuitable investment strategy based on Mrs. Kane's investment profile and the lack of a TOD registration form; (xv) violation of FINRA Rule 3110 in connection with their failure to establish and comply with supervisory procedures, permitting the filing of multiple falsified documents resulting in the theft of Plaintiff's property; (xvi) violation of FINRA Rule 4511 in connection with their intentional destruction of documents relating to Mrs. Kane's Ameriprise Account; and (xvii) facilitating the actions detailed above.

153.    The following actions of Flaherty, among others, are unfair and oppressive and violate the public policy against unfair and deceptive business practices: (i) conspiring with Bernadette and/or Salerno to deceive Mrs. Kane in connection with the designation of Bernadette as the sole beneficiary of the 2017 Invalid Will; (ii) making intentional misrepresentations to the Probate Court in regards to the 2017 Invalid Will, the beneficiary designations of the IRA Account, and the assets remaining in Mrs. Kane's estate at the time of her death; (iii) violation of Rule 1.6 of the Rules of Professional Conduct ("RPC") in connection with the release to the Ameriprise Defendants of information relating to Flaherty's representation of Mrs. Kane without her informed consent; (iv) violation of Rule 1.14 of the RPC by failing to consult with individuals or entities that have the ability to take action to protect Mrs. Kane despite the clear evidence that Mrs. Kane was likely to suffer financial harm or otherwise by the fraudulent conduct of the Ameriprise Defendants and Bernadette; (v) violation of Rule 3.3. of the RPC by his intentional misrepresentations to the Probate Court in regards to the 2017 Invalid Will, the beneficiary designations of the IRA Account, and the assets remaining in Mrs. Kane's estate at the time of her

death; (vi) violation of Rule 4.1 of the RPC by his intentional misrepresentations to the Probate Court in regards to the 2017 Invalid Will, the beneficiary designations of the IRA Account, and the assets remaining in Mrs. Kane's estate at the time of her death; and (vii) violation of Rule 8.4 of the RPC by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, including without limitation conspiring with Bernadette and/or Salerno to deceive Mrs. Kane in connection with the designation of Bernadette as the sole beneficiary of the 2017 Invalid Will.

154.     The Defendants' aforementioned conduct was undertaken in the course of their trade or business.

155.     The Defendants' aforementioned conduct therefore constitutes unfair or deceptive practices within the meaning of Connecticut General Statute § 42-110(b), in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, and/or is substantially injurious to consumers, competitors or other businesspersons.

156.     The Defendants' aforementioned conduct caused substantial monetary injury to Ms. Maguire, that she could not reasonably avoid, and is not outweighed by any countervailing benefit to consumers, competitors or other businesspersons.

157.     As a direct and proximate result of the Defendants' violations of CUTPA, Ms. Maguire has suffered an ascertainable loss of money.

158.     The Plaintiff respectfully requests that, due to Defendants' deceptive, intentional, wanton and malicious acts, punitive damages of no less than $887,426.76 be awarded to Plaintiff pursuant to CGS 42-110g(d).

159.     The Plaintiff also respectfully requests that, due to Defendants' deceptive, intentional, wanton and malicious acts, Plaintiff's costs and reasonable attorneys' fees be awarded

to Ms. Maguire pursuant to CGS 42-110g(a).

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in her favor as follows:

i.   Compensatory damages in an amount equal to at least $295,808.92, or a greater amount to be proven at trial;

ii.  Punitive and exemplary damages in an amount to be proven at trial, in an amount no less than $887,426.76;

iii. Reasonable attorney's fees, costs, expenses, and interest in an amount to be determined at trial; and

iv.  Such other and further relief to Plaintiff as this Court deems just, fair, and proper.


Respectfully Submitted,
Plaintiff,

*Patricia Kane Maguire*


Joseph M. Pastore III
Leanne M. Shofi
Paul Fenaroli
Pastore LLC
Juris No: 433711
4 High Ridge Park, 3rd Floor
Stamford, CT 06905
203.658.8454 tel
203.717.5550 fax
jpastore@pastore.net
lshoft@pastore.net
pfenaroli@pastore.net
Attorneys for Plaintiff

# Exhibit A

# *Last Will and Testament*

## *of*

## *A. PATRICIA KANE,*
## *A/K/A AGNES P. KANE*

I, A. PATRICIA KANE, A/K/A AGNES P. KANE, residing at 2150 Beltane Road, Toms River, New Jersey, being of sound and disposing mind, memory and understanding, do hereby make, publish and declare this to be my LAST WILL AND TESTAMENT, in words and manner following, revoking any LAST WILL AND TESTAMENT or Codicil hereinbefore by me and at any time made.

FIRST: I direct that all of my just debts and funeral expenses be paid as soon as may be convenient after my demise. My Executor may pay, in his discretion, all legal debts as to which there are no defenses in law or equity at the time of my death, including any mortgage on any such property which shall be my personal residence at the time of my death. My Executor may pay, in his sole discretion, all or any portion of the cost of any ancillary administration or similar proceedings in other jurisdictions.

SECOND: I direct that all estate, inheritance, succession, death or similar taxes (except generation-skipping transfer taxes) assessed with respect to my estate herein disposed of, or any part thereof, or on any bequest or devise contained in this my LAST WILL AND TESTAMENT (which term wherever used herein shall include any Codicil hereto), or on any insurance upon my life or on any property held jointly by me with another or on any transfer made by me during my lifetime or on any other property or interests in property included in my estate for such tax purposes be paid out of my residuary estate and shall not be charged to or against any recipient, beneficiary, transferee or owner of any such property or interests in property included in my estate for such tax purposes.

THIRD: I give my tangible personal property as provided in a separate letter of instruction, signed by me and placed in the envelope with my LAST WILL AND TESTAMENT. If for any reason, there is no such writing in evidence at my death, or if that writing does not dispose of all of my tangible personal property, then I give that property, to the extent that it has not been so disposed of, as follows:

I hereby direct that all such tangible personal property be given to my daughters, PATRICIA MAGUIRE and BERNADETTE DUFFY, as they can pick and choose to receive same. Any items not chosen shall be sold and the proceeds to be added to my residuary estate.

AKANE-Will

FOURTH:  I hereby direct that the residence owned by me at the time of my death shall be sold and the proceeds added to my residuary estate.

FIFTH:  I hereby give, devise and bequeath my entire remaining estate, consisting of all other property which I shall own or of which I may die seized equally to my daughters on a per stirpes basis as follows:

PATRICIA MAGUIRE                    FIFTY (50%) PERCENT
(my daughter)
77 Havermyer Lane, Unit 210
Stamford, Connecticut

BERNADETTE DUFFY                   FIFTY (50%) PERCENT
(my daughter)
233 Homeland Street
Fairfield, Connecticut

SIXTH:    I authorize and empower my Executor, hereinafter named, without authorization of Court, and by way of illustration, and not in limitation of his powers, to sell, convey, mortgage, lease, invest, reinvest, exchange, manage, control, retain or otherwise deal with, and dispose of, or encumber any and all property, real or personal, comprising my estate, and to execute, acknowledge, and deliver all proper writings, deeds, mortgages, conveyances, and transfers therefore; to adjust, compromise, settle any claim or demands in favor of or against my estate upon such terms as is deemed advisable; and to make distribution of this LAST WILL AND TESTAMENT in kind or in money, or partly in kind or partly in money; to vote at corporate meetings in person or by proxy with or without power of substitution; to hold any and all of the securities or other property in name of a duly appointed nominee, with or without disclosing the fiduciary relation.

SEVENTH:  I hereby direct that no fiduciary appointed pursuant to provisions of this my LAST WILL AND TESTAMENT shall be required to furnish bond or other security in any jurisdiction for the faithful performance of any fiduciary duties.

EIGHTH:    I nominate, constitute and appoint my daughters, PATRICIA MAGUIRE and BERNADETTE DUFFY, as the Co-Executrixes of this my LAST WILL AND TESTAMENT with all of the powers and authorities hereinbefore referenced.  In the event that PATRICIA MAGUIRE or BERNADETTE DUFFY has not qualified within ninety (90) days from the time of my death, predeceased me, or for any reason should be unable to complete their duties, I nominate, constitute and appoint the remaining Co-Executrix to serve alone as my Contingent Executrix of this my LAST WILL AND TESTAMENT with all of the powers and authorities permitted by State law.

AKANE-Will                                          2

NINTH:  In regard to any distribution payable to a minor, make those payments directly to the minor, or to either of the parents of the minor, or to any person standing in loco parentis to the minor, or to any person, firm or corporation for the benefit of the minor, or to a custodian or a successor custodian (as designated by my Executor or Trustee) under the New Jersey Uniform Transfers To Minors Act or equivalent statute, to be administered and distributed pursuant to the terms of the relevant statute.  The receipt and release of the recipient shall be a complete and absolute discharge of my Executor or Trustee as to each payment made in accordance with the provisions of this paragraph.

TENTH:  If any beneficiary, shall in any manner, directly or indirectly, attempt to contest or oppose the validity of this Will, including any codicils thereto, or commences or prosecutes any legal proceedings to set aside this LAST WILL AND TESTAMENT, then in such event such beneficiary shall forfeit his or her share, as well as the share of any of his or her descendants, and cease to have any right or interest in the estate property.  Such beneficiary's share shall be distributed as if the contesting beneficiary predeceased me without any living descendants.

My Executor is authorized to defend, at the expense of the estate property, any contest or other attack of any nature on this LAST WILL AND TESTAMENT or any of its provisions.

LASTLY:  In the construction of this LAST WILL AND TESTAMENT, whenever by reason of the applicable fact and the context hereof, it is appropriate and necessary, the singular shall include the plural, and vice versa, and all pronouns and such words as shall be construed in the appropriate gender, whether masculine, feminine or neuter, as the case may be, and further shall be construed to refer to the surviving or successor Executor, as well as the original Executor, and shall likewise be construed to be of such number and gender as the context may require.

IN WITNESS WHEREOF, I hereunto set my hand and seal this _____ day of _____, 2016.

_____
A. PATRICIA KANE,
A/K/A AGNES P. KANE

I, A. PATRICIA KANE, A/K/A AGNES P. KANE, the Testatrix, sign my name to this Instrument this _____ day of _____, 2016, and being duly sworn, do hereby declare to the undersigned authority that I sign and execute this Instrument as my LAST WILL AND TESTAMENT; and I sign it willingly; that I execute it as my free and voluntary act for the purposes therein expressed; and that I am eighteen (18) years of age or older, of sound mind and under no constraint or undue influence.

_____
A. PATRICIA KANE,
A/K/A AGNES P. KANE

AKANE-Will

3

WE, _Aimee Friedland_ and _Dan Mitchell_, the witnesses, sign our names to this Instrument, and being duly sworn, do hereby declare to the undersigned authority that the Testatrix signed and executed this Instrument as her LAST WILL AND TESTAMENT and that she signed it willingly; that each of us, in the presence and hearing of the Testatrix, hereby signs this LAST WILL AND TESTAMENT as witness to the signing thereof by the Testatrix; and that to the best of our knowledge the Testatrix is eighteen (18) years of age or older, of sound mind and under no constraint or undue influence.

_____ 639 Larry Rd. Forked River NJ
WITNESS          ADDRESS

_____ 639 Larry Rd Forked Riv, NJ
WITNESS          ADDRESS

STATE OF NEW JERSEY    :
                       :ss.
COUNTY OF OCEAN        :

     SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me by A. PATRICIA KANE, A/K/A AGNES P. KANE, the Testatrix, and subscribed and sworn to before me by _Aimee Friedland_ and _Dan Mitchell_, the witnesses, this _20th_ day of _January_, 2016.

_____
Scott M. Hanula
Attorney at Law
State of New Jersey

AKANE-Will                                    4

## ACKNOWLEDGMENT AND AFFIDAVIT RELATING TO
## EXECUTION OF WILL

STATE OF NEW JERSEY  :
                      :ss.
COUNTY OF OCEAN       :

The Testatrix and the witnesses whose names are signed to the attached Instrument, being first duly sworn, do hereby declare to the undersigned authority that the Testatrix signed and executed the Instrument as her LAST WILL AND TESTAMENT and that she signed willingly and that she executed it as her free and voluntary act for the purposes therein expressed; and that each witness states that he or she signed the LAST WILL AND TESTAMENT as witness in the presence and hearing of the Testatrix and that to the best of his or her knowledge, the Testatrix was at the time 18 or more years of age, of sound mind and under no constraint or influence.

_____
Testatrix

_____
Witness

_____
Witness

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me by the Testatrix, and subscribed and sworn to before me by the above named witnesses, this _20th_ day of _January_, 2016.

_____
Scott M. Hanula
Attorney at Law
State of New Jersey

AKANE-Will                                    5

# Exhibit B

# LAST WILL AND TESTAMENT

## OF

## A. PATRICIA KANE

**Dated: December 5, 2017**

**Prepared by:**

James J. Flaherty, Jr.
Gager, Emerson, Rickart,
Bower & Scalzo, LLP
325 Main Street South
Southbury, CT 06488
(203) 262-6600

I, **A. PATRICIA KANE,** of Shelton, Connecticut, declare this to be my Last Will and Testament, and I hereby revoke any and all of my prior Wills and Codicils.

**FIRST:**  I give and bequeath all tangible personal property owned by me at the time of my death, including automobiles and related equipment and articles of household use or ornament, excepting therefrom, without limitation, money, currency, securities and the like, as may be selected in my Executor's sole discretion to my daughter, BERNADETTE KANE, of Fairfield, Connecticut, if she shall survive me.  If BERNADETTE KANE shall fail to survive me, then I give and bequeath such tangible personal property, as may be selected in my Executor's sole discretion to my daughter, SHANNON DUFFY, of Stamford, Connecticut.  I request, but do not require, that my Executor, in making such allocation, comply with any memoranda or written requests which may be found with this my Will or with any of such tangible personal property.  Any decisions made by my Executor in the selection and allocation of such property shall be binding and conclusive upon all persons interested hereunder and shall not be subject to any review whatsoever.

Any reasonable cost or expense of storing, insuring, shipping, moving and distributing such tangible personal property shall be paid out of my residuary estate as an administration expense.

**SECOND:**  I give, devise, bequeath and specifically appoint all the rest, residue and remainder of my estate (hereinafter referred to as the "residuary estate") to my daughter, BERNADETTE KANE, if she shall survive me.  Should BERNADETTE KANE fail to survive

1

me, I give, devise, bequeath and specifically appoint my residuary estate to my then living grandchildren, in equal shares, per capita.

**THIRD:**  I direct that any and all estate, inheritance, succession and transfer taxes, and any and all death duties (including any interest and penalties accruing or assessed in respect of such taxes and duties) which may be imposed upon the property disposed of in this Will, or in respect of such disposition, or upon any other property (including insurance) otherwise disposed of and subject to the imposition of such taxes or duties, or which may be imposed upon or payable by any of the devisees, legatees or beneficiaries hereunder on account of any property or interest in property passing under or by virtue of this Will, or which otherwise may become payable by reason of my death or any transfer, succession, disposition or passage occurring upon or in consequence of my death, shall be paid from and charged to my residuary estate; and without proration or apportionment of any such taxes or duties (including interest or penalties) among or between any of such devisees, legatees or beneficiaries, and without the enforcement of any right of reimbursement, indemnification or contribution which otherwise might be available to any of such devisees, legatees or beneficiaries.

**FOURTH:** I nominate, constitute and appoint my daughter, BERNADETTE KANE, of Fairfield, Connecticut, as Executor of this, my Last Will and Testament.  In the event that BERNADETTE KANE shall fail or cease to act for any reason, then I nominate, constitute and appoint my grandson, PATRICK MAGUIRE, of New York, New York, as Executor or Successor Executor hereunder.

2

*APK*

I direct that no bond or other security shall be required of any designated fiduciary for the performance of the duties of such office.  Wherever used herein, the term "my Executor" shall be deemed to refer to my designated Executor or any successor or alternate, as the context may require.

**FIFTH:**  My Executor is hereby granted, in addition to the general powers conferred by law and any powers stated in, implied by, or derived from any provision of this Will or any combination of provisions hereof, the following powers with respect to my estate (none of which powers shall be construed to impose any obligation upon my Executor to exercise one or more of such powers):

  **A.** All of the powers enumerated in Section 45a-234 of the Connecticut General Statutes, as in effect on the date hereof.

  **B.** The following powers set forth in the following subsections of Section 45a-235 of the Connecticut General Statutes, as in effect on the date hereof:

| | |
|---|---|
| 1. | Stock of Fiduciary; |
| 2. | Buy Insurance and Annuities; |
| 3. | Invest in Partnerships, etc.; |
| 4. | Speculative Assets; |
| 5. | Oil and Gas Interests; |
| 6. | Form Corporation or Other Entity; |
| 7. | Fiduciary May Become Director or Officer; |
| 8. | Operate Farm; |
| 9. | Residential Realty; |
| 10. | Deal with Estate and Trust; |
| 11. | Suits on Insurance Policies; |
| 12. | Advancement of Income; |
| 13. | Majority Action Permissible; |
| 14. | Reduce Interest Rates; |
| 15. | Establish and Maintain Reserves; |
| 16. | Investment Philosophy; |
| 17. | Investment During Estate Administration; |
| 18. | Premium and Discount; |
| 19. | Remortgage and Refinance Real Estate; |

APK

| | |
|---|---|
| 20. | Terminate Small Trusts; |
| 21. | Distribute Directly to Remaindermen; |
| 22. | Disclaimer of Power; |
| 23. | Comply With Stock Restrictions; |
| 24. | Continue Subchapter S election; |
| 25. | Acquire Interest in Trust Asset; |
| 26. | Income to Custodian for Minor; and |
| 27. | General Powers |

     **C.** All of the powers enumerated in Section 45a-334a of the Connecticut General Statutes, as in effect on the date hereof; along with the power to access and transfer, whenever permitted by law, such other digital assets as may be part of my Estate.

     **SIXTH:**  Whenever pursuant to the provisions of my Will any share of my residuary estate or any trust established out of my residuary estate becomes payable to any person who has not yet attained the age of twenty-one (21) years, title thereto shall vest in such person, but the payment thereof shall be deferred until such person attains the age of twenty-one (21) years and, in such interim period, my Executor shall hold such share, who shall apply such share and the income therefrom, or so much thereof and income therefrom as my Executor, in my Executor's absolute discretion, shall determine for the support in reasonable comfort, maintenance, health and education of such person, without regard to other income or other resources of such person; any income not so applied by my Executor shall be accumulated and added to such principal, at least annually.

     My Executor shall deliver the balance of such share and any income therefrom to such person upon such person's attaining the age of twenty-one (21) years or to the estate of such person upon his or her death prior to having attained the age of twenty-one (21) years. Nothwithstanding the foregoing provisions of this Article, my Executor may at any time or from time to time, in my Executor's absolute discretion, deliver all or a portion of such share which

4

*APk*

shall then remain, together with the accumulations, if any, of income therefrom, to the guardian or guardians of such person legally appointed in any jurisdiction, or to a custodian for such minor under the applicable Uniform Transfers to Minors Act.

**SEVENTH:**   Any beneficiary, hereunder, who shall fail to survive me for a period of sixty (60) days following my death shall be deemed not to have survived me for purposes of this, my Last Will and Testament.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my seal this 5th day of December 2017.

_____ [L.S.]
A. PATRICIA KANE

Signed, sealed, published and declared by the above-named Testatrix as and to be her Last Will and Testament in the presence of us, who in her presence and in the presence of each other, and at her request, have hereunto subscribed our names as witnesses the day and year above written.

_____ of Shelton, Connecticut
David G. Gosart

_____ of Shelton, Connecticut
Kathleen M. Gosart

STATE OF CONNECTICUT    )
                         ) ss: Shelton            December 5, 2017

COUNTY OF FAIRFIELD     )

Personally appeared DAVID G. GOSART and KATHLEEN M. GOSART, witnesses to the foregoing Last Will and Testament of A. PATRICIA KANE, who, being duly sworn, depose and say that they subscribed said Will as witnesses thereto in the presence of said Testatrix and in the presence of each other, that the said Testatrix signed said Will in their presence and acknowledged that she had signed said Will and declared the same to be her Last Will and Testament in their presence, and in the presence of each other; and deponents further say that at the time of the execution of said Will the said Testatrix appeared to them to be of lawful age, sound mind and memory and free from any undue influence or duress and that they make this affidavit at her request.

_____
David G. Gosart

_____
Kathleen M. Gosart

Subscribed and sworn to before me this 5th day of December 2017.

_____
James J. Flaherty, Jr.
Commissioner of the Superior Court

6

## STATUTORY POWER OF ATTORNEY – LONG FORM

**Notice:  The powers granted by this document are broad and sweeping.  They are defined in Connecticut Uniform Power of Attorney Act, which expressly permits the use of any other or different form of power of attorney desired by the parties concerned.  The grantor of any power of attorney or the agent may make application to a court of probate for an accounting as provided in subsection (b) of Section 45a-175, of the general statues.  This power of attorney does not authorize the agent to make health care decisions for you.**

Know All Men by These Presents, which are intended to constitute a GENERAL POWER OF ATTORNEY pursuant to Connecticut Uniform Power of Attorney Act:

That I, A. PATRICIA KANE, of 129 Paugassett Lane; Shelton, Connecticut 06484

do hereby appoint: BERNADETTE KANE, of 233 Homeland Street; Fairfield, Connecticut 06825

My agent(s) TO ACT:
(If more than one agent is designated and the principal wishes each agent alone to be able to exercise the power conferred, insert in this blank the word "Severally".  Failure to make any insertion or the insertion of the word "jointly" shall require the agents to act jointly.)

First:  In my name, place and stead in any way which I myself could do, if I were personally present, with respect to the following matters as each of them is defined in the Connecticut Uniform Power of Attorney act to the extent that I am permitted by law to act through an agent:

*(Strike out and initial in the opposite box any one or more of the subparagraphs as to which the principal does NOT desire to give the agent authority.  Such elimination of any one or more of subparagraphs (A) to (M), inclusive, shall automatically constitute an elimination also of subdivision (N)).*

*To strike out any subdivision the principal must draw a line through the text of that subdivision AND write his/her initials in the box opposite.*

| | | | |
|---|---|---|---|
| (A) | Real property; | ( | ) |
| (B) | Tangible personal property; | ( | ) |
| (C) | Stocks and bonds; | ( | ) |
| (D) | Commodities and options; | ( | ) |
| (E) | Banks and other financial institutions; | ( | ) |
| (F) | Operation of entity or business; | ( | ) |
| (G) | Insurance and annuities; | ( | ) |
| (H) | Estates, trusts, and other beneficial interests; | ( | ) |
| (I) | Claims and litigation; | ( | ) |
| (J) | Personal and family maintenance; | ( | ) |
| (K) | Benefits from governmental programs or civil or military service; | ( | ) |
| (L) | Retirement plans; | ( | ) |
| (M) | Taxes; | ( | ) |
| (N) | All other matters: | ( | ) |

_____

_____

(Special provisions and limitations may be included in the statutory form power of attorney only if they conform to the requirements of the Connecticut Uniform Power of Attorney Act.)

## OPTIONAL ESTATE PLANNING POWERS

### YOU SHOULD SEEK LEGAL ADVICE BEFORE INCLUDING THE FOLLOWING POWERS:

**CAUTION: Granting any of the following will give your agent the authority to take actions that could significantly reduce your property or change how your property is distributed at your death.  INITIAL ONLY the specific authority you WANT to give your agent.**

**My agent MAY NOT do any of the following specific acts UNLESS I HAVE INITIALED the specific authority listed below:**

(O)   Make a gift, to herself or my descendants, subject to the limitations *(A.P.K )*
of the Connecticut Uniform Power of Attorney Act and any special
instructions in this power of attorney to the principal's descendants or
agent. Unless otherwise provided in the special instructions, gifts per
recipient may not exceed the annual dollar limits of the federal gift
tax exclusion under the Internal Revenue Code Section 2503(b),
or if the principal's spouse agrees to consent to a split gift pursuant
to Internal Revenue Code Section 2513, in an amount per recipient
not to exceed twice the annual federal gift tax exclusion limit.
In addition, an agent must determine that gifts are consistent with the
principal's objectives if actually known by the agent and, if unknown,
as the agent determines is consistent with the principal's best interest
based on all relevant factors;

(P)   Take any action (including changing a terms of service agreement *(A.P.K )*
or other governing instrument) with respect to my Digital Assets and
Digital Accounts as my Agent deems necessary or appropriate, and as
shall be permitted by applicable law.  This authority is intended to
constitute "lawful consent" to a service provider to divulge the contents
of any communication under The Stored Communications Act (currently
codified as 18 U.S.C.§ 2701 et seq.), to the extent such lawful consent is
required, and my Agent shall be an authorized user for purposes of
applicable computer-fraud and unauthorized-computer-access laws.

---

**Second:**  With full and unqualified authority to delegate any or all of the foregoing powers to any person or persons whom my agent(s) shall select.

**Third:**  Hereby ratifying and confirming all that said agent(s) or substitutes(s) do or cause to be done.

**Fourth: LIMITATION ON AGENT'S AUTHORITY.**  An agent that is not my ancestor, spouse, or descendant MAY NOT use my property to benefit the agent or a person to whom the agent owes an obligation of support unless I have included that authority in the special instructions.

**Fifth:  DESIGNATION OF SUCCESSOR AGENT(S) (OPTIONAL)**

If my agent is unable or unwilling to act for me, I name as my successor agent:

PATRICK MAGUIRE, of New York, New York

If my successor agent is unable or unwilling to act for me, I name as my second successor agent:

Name of Second Successor Agent: _____

Second Successor Agent's Address: _____

**Sixth: EFFECTIVE DATE. This** power of attorney is effective immediately unless I have stated otherwise in the special instructions. This Power of Attorney shall remain in full force and effect until the occurrence of the first of the following events: (1) my death; (2) the death of my attorney in fact named herein; (3) the appointment of a conservator of my estate; and (4) the filing by me of a written revocation of this Power of Attorney with Attorney James J. Flaherty, Jr., of the law firm of Gager, Emerson, Rickart, Bower & Scalzo, LLP or its successor, 325 Main Street South, Southbury, Connecticut 06488. Subject to the foregoing, this Power of Attorney shall be considered to be of indefinite duration and shall not be affected by my subsequent incapacity.

The execution of this statutory long form power of attorney shall be duly acknowledged by the principal in the manner prescribed for the acknowledgment of a conveyance of real property.

**In Witness Whereof,** I have hereunto signed my name and affixed my seal this 5th day of December 2017.

_____
David G. Gosart

_____
A. PATRICIA KANE

_____
Kathleen M. Gosart

STATE OF CONNECTICUT )
                                            ) ss. Shelton                    December 5, 2017
COUNTY OF FAIRFIELD    )

      On this the 5th day of December 2017, before me, A. PATRICIA KANE, signer of the foregoing instrument, personally appeared, and acknowledged the execution of such instrument to be her free act and deed.

_____
James J. Flaherty, Jr.
Commissioner of the Superior Court

3

ADVANCE HEALTH CARE DIRECTIVE

TO ANY PHYSICIAN WHO IS TREATING ME:

These are my health care instructions including those concerning the withholding or withdrawal of life support systems, together with the appointment of my health care representative and my document of anatomical gift.  As my physician, you may rely on these health care instructions and any decision made by my health care representative, if I am incapacitated to the point when I can no longer actively take part in decisions for my own life, and am unable to direct my physician as to my own medical care.

<u>Living Will</u>

I, A. PATRICIA KANE, of Shelton, Connecticut, request that, if my condition is terminal or if I am permanently unconscious, I be allowed to die and not be kept alive through life support systems.  By terminal condition I mean that I have an incurable or irreversible medical condition which, without the administration of life support systems, will, in the opinion of my attending physician, result in death within a relatively short time.  By permanently unconscious I mean that I am in a permanent coma or persistent vegetative state which is an irreversible condition in which I am at no time aware of myself or the environment and show no behavioral response to the environment.  The life support systems which I do not want include, but are not limited to, artificial respiration, cardiopulmonary resuscitation and artificial means of providing nutrition and hydration.  I do want sufficient pain medication to maintain my physical comfort.  I do not intend any direct taking of my life, but only that my dying not be unreasonably prolonged.

<u>Appointment of Health Care Representative</u>

I appoint my daughter, BERNADETTE KANE, of Fairfield, Connecticut, to be my health care representative.  If BERNADETTE KANE is unwilling or unable to serve as my health care representative, I appoint my grandson, PATRICK MAGUIRE, of New York, New York, to be my successor health care representative.

If my attending physician determines that I am unable to understand and appreciate the nature and consequences of health care decisions and unable to reach and communicate an informed decision regarding treatment, my health care representative is authorized to make any and all health care decisions for me, including the decision to accept or refuse any treatment, service or procedure used to diagnose or treat my physical or mental condition, except as otherwise provided by law, including, but not limited to, psychosurgery or shock therapy, and the decision to provide, withhold or withdraw life support systems.  I direct my health care representative to make decisions on my behalf in accordance with my wishes, as stated in this document or as otherwise known to my health care representative.  In the event my wishes are not clear or a situation arises that I did not anticipate, my health care representative may make a decision in my best interests, based upon what is known of my wishes.

<u>HIPAA Release Authority</u>.  I intend for my health care representative to be treated as I would be with respect to my rights regarding the use and disclosure of my individually identifiable health information or other medical records.  This release authority applies to any

1

information governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 USC 1320d and 45 CFR 160-164.

I authorize any physician, health-care professional, dentist, health plan, hospital, clinic, laboratory, pharmacy or other covered health-care provider, any insurance company and any other health-care clearinghouse that has provided treatment or services to me, or that has paid for or is seeking payment from me for such services, to give, disclose and release to my health care representative, without restriction, all of my individually identifiable health information and medical records regarding any past, present or future medical or mental health condition, including all information relating to the diagnosis and treatment of HIV/AIDS, sexually transmitted diseases, mental illness, and drug or alcohol abuse.

The authority given my health care representative shall supersede any prior agreement that I may have made with my health-care providers to restrict access to or disclosure of my individually identifiable health information.  The authority given my health care representative has no expiration date and shall expire only in the event that I revoke the authority in writing and deliver it to my health-care provider.

Document of Anatomical Gift

_APK_  I hereby choose not to make an anatomical gift.

_____  I hereby make this anatomical gift, if medically acceptable, to take effect upon my death:

I give: (check one)

    _____ any needed organs or parts
    _____ only the following organs or parts:

    _____
    _____

to be donated for: (check one)

    _____ any of the purposes stated in Section 19a-289j of the Connecticut General Statutes
    _____ purposes of transplantation only
    _____ these limited purposes: _____

    _____
    _____

I hereby revoke any Advance Health Care Directive, including any Power of Attorney for Health Care Decisions, which I have executed prior to this date.  This Advance Health Care Directive shall not be affected by my subsequent disability or incompetence.

2

This Advance Health Care Directive is made after careful reflection, while I am of sound mind. Any party receiving a duly executed copy or facsimile of this document may rely upon it unless such party has received actual notice of my revocation of it.


December 5, 2017 _____          _A. Patricia Kane_____ (L.S.)
Date                                        A. PATRICIA KANE


This document was signed above in our presence by A. PATRICIA KANE the author of this document, who appeared to be eighteen years of age or older, of sound mind and able to understand the nature and consequences of health care decisions at the time this document was signed. The author appeared to be under no improper influence. We have subscribed this document in the author's presence and at the author's request and in the presence of each other.


_____          of Shelton, Connecticut
David G. Gosart

_____          of Shelton, Connecticut
Kathleen M. Gosart

3

STATE OF CONNECTICUT  )
                             ) ss. Shelton                         December 5, 2017
COUNTY OF FAIRFIELD    )

        We, the subscribing witnesses, being duly sworn, say that we witnessed the execution of this Advance Health Care Directive by A. PATRICIA KANE; that she subscribed, published and declared the same to be her Advance Health Care Directive; that we thereafter subscribed the document as witnesses in her presence, at her request, and in the presence of each other; that at the time of the execution of said document she appeared to us to be eighteen years of age or older, of sound mind, able to understand the nature and consequences of said document, and under no improper influence, and we make this affidavit at her request this 5th day of December 2017.

                                                  _____
                                                  David G. Gosart

                                              _____
                                                  Kathleen M. Gosart

Subscribed and sworn to
this 5th day of December
2017, before me.

_____
James J. Flaherty, Jr.
Commissioner of the Superior Court

4

## DESIGNATION OF CONSERVATOR
## BY
## A. PATRICIA KANE

I, A. PATRICIA KANE, of Shelton, Connecticut, being of full age and of sound mind, hereby designate my daughter, BERNADETTE KANE, of Fairfield, Connecticut, as the person whom I desire to have appointed as conservator of my person and estate in the event that I should at any time hereafter become incapable of managing my affairs.

IF BERNADETTE KANE shall be unable or unwilling so to act, I designate PATRICK MAGUIRE, of New York, New York, to be my successor conservator of my person and estate.

No bond shall be required in any jurisdiction of any conservator appointed pursuant to this designation.  This designation is made pursuant to the provisions of Connecticut General Statutes, Section 45a-645.

IN WITNESS WHEREOF, I have hereunto set my hand and seal on this 5th day of December 2017.

_A. Patricia Kane_ (L.S.)
A. PATRICIA KANE

Signed, sealed, published and declared by the above-named person as and for her designation of conservator in the presence of us who at her request, in her presence and in the presence of each other have hereunto subscribed our names as witnesses.

_____ of Shelton, Connecticut
David G. Gosart

_____ of Shelton, Connecticut
Kathleen M. Gosart

1

STATE OF CONNECTICUT )
                             ) ss. Shelton                          December 5, 2017
COUNTY OF FAIRFIELD     )

        We, the undersigned, being duly sworn, do depose and say that we witnessed the execution by A. PATRICIA KANE of her designation of conservator and subscribed the same in her presence, in the presence of each other and at her request; that at the time of signing said designation of conservator she appeared to us to be of full age and of sound and disposing mind and memory; that she voluntarily signed said designation of conservator and declared it to be her designation of conservator in our presence; and that this affidavit is made at her request.

_____
David G. Gosart

_____
Kathleen M. Gosart

Subscribed and sworn to
this 5th day of December
2017, before me.

_____
James J. Flaherty, Jr.
Commissioner of the Superior Court

2

# Exhibit C

*Account assumes 122146 - Salerno 2/6/98*
*Transfer on Death Account   Agnes - (Date of birth*
*100% Bernadette   & signature very faint)*

CASE

Ameriprise Financial Services, Inc. 70400 Ameriprise Financial Center Minneapolis, MN 55474

# *Ameriprise*® SPS *Advantage* and Financial Planning Services Account


Ameriprise
*Financial*

Non-Qualified Account
New Business Setup Confirmation

Account Number
00079893534              133

Taxpayer Identification Number  **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**

## Account Ownership

| | |
|---|---|
| Client 1/Taxpayer | **A    P Kane 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** |
| Signed State: | **Connecticut** |
| Client is an Exempt payee: | **No** |
| Ownership: | **Individual TOD** |
| Recommending Advisor Name/#: | **Anthony Joseph Salerno 30306** |
| Servicing Advisor Name: | **Anthony Joseph Salerno** |
| Servicing Advisor ID: | **30306** |

## Account Suitability

| | |
|---|---|
| Planned Initial Investment Amount: | **$220,000.00** |
| Source of Funds: | **Other** |
| Investment Time Frame: | **E. 11+ Years** |

If your time frame for evaluating investment results is less than four years, SPS *Advantage* may not be appropriate.

| | |
|---|---|
| Risk Tolerance: | **D. Moderate/Aggressive** |
| First Investment Objective: | **I. Growth** |
| Liquidity Needs: | **C. 8+ years** |

Determined with client that investment assets held outside of Ameriprise are not applicable to recommendations in this account

## Account Settings

**Money Settlement Option:**     **Ameriprise® Insured Money Market Account (AIMMA)**
AIMMA is a FDIC-insured, interest bearing bank deposit product offered by Ameriprise Financial Services, Inc. and is not covered by SIPC. Uninvested cash balances will sweep within two business days.

**Equity Dividend Option:**     **Cash (sweeps to money settlement option)**
Any reinvestment or payout election made at a security level will supersede this election.
Additional income elections are available and can be made using Form 402202.

| | |
|---|---|
| Structured Notes: | **Not Requested** |
| Structured CDs: | **Not Requested** |
| Mortgage Backed Securities: | **Not Requested** |
| High Yield Corporate Bonds: | **Not Requested** |

© 2014 - 2016 Ameriprise Financial, Inc.
All rights reserved.

DOC0209N90614

| | |
|---|---|
| Beneficiary/Transfer On Death Designation: | **E. Other (Person, Trust, Organization, etc.)** |
| | **Primary** |
| Percentage or Fraction: | **100.00** |
| Beneficiary Name: | **Bernadette Duffy** |
| Relationship: | **Daughter** |
| Taxpayer's Marital Status: | **Unknown** |

Consolidated Advisory Fee Relationship: **Requested**

Financial Planning Account Set-up

| | |
|---|---|
| Ownership Type: | **Individual** |
| Account Holder, Executor, Principal or Trustee Name: | **A  P  Kane** |
| Social Security Number or Tax ID: | **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** |
| Additional applications Submitted: | **No** |
| Equities, Preferreds, ETFs, ETNs, Closed End Mutual Funds, UITs, REITs, BDCs, Debt, and Options: | **FIFO** |
| Open-End Mutual Funds: | **Average** |
| Dividend Reinvestment Plans for Non Open-End Mutual Funds: | **FIFO** |
| Market Discount Computation Method: | **Constant Yield** |
| Recognition of Market Discount Income: | **At Sale/Maturity** |
| Amortize Bond Premium on Taxable Debt: | **Amortize** |

## Wrap Fee

This SPS *Advantage* Worksheet helps you and your financial advisor assess your preference for an SPS *Advantage* account relationship rather than a transaction-based brokerage account relationship in which you pay commissions and other charges (such as sales loads on mutual funds) based on each individual securities transaction. You must be able to invest and maintain a minimum of $25,000 in SPS *Advantage* Account(s) held within your Household and a minimum of $1,000 per account. Generally, you should have an investment timeframe of at least four years for your SPS *Advantage* Account and desire diversification with multiple fund families and/or individual securities. This SPS *Advantage* Worksheet is also designed to help ensure that you and your advisor have a common understanding of the criteria used to determine the Wrap Fee that will be charged to your SPS *Advantage* Account.

This worksheet helps you and your financial advisor determine and agree to the annual Wrap Fee (which will be charged quarterly or monthly) that applies to your SPS *Advantage* Account(s). If you hold more than one SPS *Advantage* Account within your Household, you can choose to determine fees at an Account level or by combining some or all such Accounts. Combining any or all such Accounts to determine your fee may or may not result in a cost lower than fees determined at an Account level. If the Wrap Fee is determined by combining Accounts, all combined Accounts must be assessed the same Wrap Fee rate.

You and your financial advisor should carefully review each factor in determining the agreed upon Wrap Fee. For each of the four SPS *Advantage* pricing factors noted below, the applicable point total selected recorded in the "Points" column on the far right. If any or all SPS *Advantage* Accounts within a Household are combined to determine the Wrap Fee, the anticipated value of all Accounts should be added together for the first factor below; other factors should be based on overall servicing for the Accounts.

| | | | |
|---|---|---|---|
| SPS *Advantage* Account(s) Value: | **Under $500,000** | Points: | **7** |
| Investment Mix and Strategy: | **Low Complexity** | Points: | **2** |
| Trading Activity: | **Low Volume** | Points: | **2** |
| Level of Service: | **Standard** | Points: | **2** |



DOC0309N90614

Total Points:    **13**

Based on the total points from above, the Wrap Fee elected must fall within the applicable point range in the following table or if lower, detail has been provided in Special Considerations and Additional Pricing Factors. The negotiated Wrap Fee percentage is generally determined based on where the total points fall within the point ranges below. For example, a total of 5 points would generally correspond to a Wrap Fee closer to .25% than .75%.

| Total Points | 4 - 8 Points | 9 - 16 Points | 17 - 28 Points | 29 - 40 Points |
|---|---|---|---|---|
| Wrap Fee (as a % of assets) | 0.25 - 0.75% | 0.5 - 1.25% | 1.0 - 1.75% | 1.25 - 1.95% |

Overall AFPS Complexity:          **Low**

SPS *Advantage* Fee:             **0.60%**

AFPS Fee:                         **0.40%**

Total Annual Wrap Fee:            **1.00%**

Billing Frequency                 **Monthly**

### Features and Offers

Card Type Selected:               None

### Acknowledgements

Upon acceptance of your Account(s) by Sponsor an acknowledgement of this acceptance will be mailed to you, from Ameriprise Financial Services, Inc.

Read this section carefully then sign and date below. By signing this section, you acknowledge and agree: a) the information you provided in this application is correct, b) an Ameriprise financial advisor has reviewed this service with you, c) you authorize all activity indicated within this application, d) we may deliver documents on a CD to you by mail or in person, and you will notify your financial advisor if you prefer to receive paper copies of these documents, e) all the terms and conditions stated in this application and in the related documents were provided to you on CD or in paper.

As used below, the words "I", "My" and "Our" refer to you the applicant(s). "You", "Your" and "Yours" refer to Ameriprise Financial Services, Inc. ("AFSI") and/or American Enterprise Investment Services, Inc. ("AEIS") which are subsidiaries of Ameriprise Financial, Inc. "AFI".

### Ameriprise® SPS *Advantage* and Financial Planning Service Account Acknowledgements:

I affirm that I am at least 18 years of age and of full legal age in my state of residence.

**Corporation, Partnership, Trust or other fiduciary:** The respective entity or fiduciary has authorized me to establish this Account, and conduct transactions in the Account on its behalf.

**Identity Information:** I understand that AFSI is required by law to obtain certain personal information from me which will be used by you to verify my identity and include in any reports to tax or regulatory authorities as required. If I do not provide you with this information, you may not be able to open my account. If you are unable to verify my identity, you reserve the right to close my account and to take such other steps as you deem reasonable.

**Information Sharing:** I understand that the clearing agent, AEIS, will release my name, address and security position to requesting companies in which you hold assets for my account.

**Termination of Account:** I understand that my account may be terminated by me or by you which will result in the cancellation of my account. I understand I am responsible for charges relating to any termination of this account.



DOC0409N90614

**Householding:** I understand that you and your affiliates may use and combine information concerning certain accounts owned by me and other members of my primary household group to provide members of the group with paper and/or electronic statements of account(s), account information and, for certain products and services, advantageous pricing or fees (you call these uses of Client Information "householding"). The types of accounts that may be included are: investment, insurance, annuity, brokerage and Managed Accounts, this includes features linked to brokerage and Managed Accounts. A primary household consists of an individual, his or her spouse or domestic partner, and their unmarried children under age 21 who reside at the same address. If I want to have a statement covering only accounts that I own and not participate in household pricing, I can call my Ameriprise financial advisor or the service number on my statement.

**Householding for Shareholder Documents:** I understand that you may use and combine information concerning accounts owned by members of a household to provide them with a single paper copy of shareholder documents. Prospectuses, supplements, annual reports, semiannual reports and proxies may be included. Under this paragraph, household is defined as two or more shareholders who share the same address and either share the same last name or have indicated that they are married or domestic partners. This remains in effect unless notified otherwise. I understand that if I wish to continue receiving multiple copies of prospectuses, supplements, annual reports, semiannual reports and proxies, I can call 1.866.273.7429 and reference the client number found on my statement. Multiple mailings will resume within 30 days of the request.

**Electronic Funds Transfer:** I understand that in connection with my brokerage account, I may transfer funds electronically between my cash sweep option and any other eligible account I designate, including accounts held by third parties, pursuant to my instructions and pursuant to the Electronic Funds Transfer terms and conditions in the *Ameriprise* Brokerage Client Agreement. I understand that funds transfers initiated via the Automated Clearing House (ACH) network are governed by the rules of the National Automated Clearing House Association (NACHA).

**Business Continuity:** I acknowledge that I have received the Ameriprise Financial Business Continuity Plan Disclosure.

**Financial Interest in Products:** AFSI has a financial interest in the sales of proprietary products manufactured by its affiliates. AFSI and its affiliates receive more revenue from the sale of some financial products and services, particularly those products and services sold under the Ameriprise, Columbia Threadneedle Investments and RiverSource brands, than for the sale of other products and services. We generally also receive more revenue for securities or products sold in a fee-based account than for those sold with only a sales charge or commission. Higher revenue generally results in greater profitability for the firm. Employee compensation (including management and field leader compensation) and operating goals at all levels of the company are tied to the company's success. Management, sales leaders and other employees generally spend more of their time and resources promoting Ameriprise, Columbia Threadneedle Investments and RiverSource products and services.

**Ameriprise Insured Money Market Account ("AIMMA"):** AIMMA is an FDIC insured, interest-bearing bank deposit product offered by Ameriprise Financial and held in an omnibus Account(s) at one or more FDIC member banks (collectively, the "Program Banks"). The Program Banks may serve individually as custodians for all or a portion of the assets held within my AIMMA, as described in the Other Important Brokerage Disclosures. For a copy of the Other Important Disclosures, visit our website at ameriprise.com/disclosures or by calling our service line at 1.800.862.7919. Deposit products are FDIC insured up to $250,000 per depositor at each Program Bank and up to $2.5 million per depositor across all Program Banks combined. Deposit products are not covered by the SIPC.

**Equities, Preferreds, ETFs, ETNs, Closed End Mutual Funds, UITs, REITs, BDCs, Debt, and Options:**

**First In First Out (FIFO)**
The first tax lots purchased are the first tax lots sold. The tax lots remaining each maintain their individual tax lot cost.

**Highest In First Out (HIFO)**
The tax lots with the highest cost basis are the first tax lots sold. The tax lots remaining each maintain their individual tax lot cost.

**Last In First Out (LIFO)**
The last tax lots purchased are the first tax lots sold. The tax lots remaining each maintain their individual tax lot cost.

If specific identification of shares sold is desired, that must be done at the time of sale.



DOC0509N90614

**Open-End Mutual Funds:**

**Average Cost Basis**
The mutual fund's cost basis is the total amount invested, averaged over the shares purchased, giving each share the same basis. As new tax lots are purchased, or other adjustments are made, the average cost of the shares is recalculated. For holding period purposes, the first tax lots purchased are the first tax lots sold. Average cost is calculated separately for covered and non-covered shares only.

**Non-Average Cost Basis**
The lot relief method for the mutual fund account will be the same lot relief method elected for equities on this account, even if there are no equities in the account.

If shares have been sold using average cost, specific identification may be prospectively accounted.

**Dividend Reinvestment Plans for Non Open-End Mutual Funds:**

**Non-Average Cost Basis**
The lot relief method for the account will be the same lot relief method elected for equities on this account, even if there are no equities in the account.

**Average Cost Basis**
The cost basis for the affected assets is the total amount invested, averaged over the shares purchased, giving each share the same basis. As new tax lots are purchased, or other adjustments are made, the average cost of the shares is recalculated. For holding period purposes, the first tax lots purchased are the first tax lots sold. Average cost is calculated for covered shares only.

**Bond Elections:**
Revoking certain bond elections may require IRS consent.

I understand and acknowledge that neither AFSI nor my financial advisor provides tax advice and I must consult my tax professional or attorney regarding tax issues specific to my circumstances.

**Wrap Fee:** I understand the negotiated Wrap Fee, as well as any other fees, charges or expenses that are applicable to my Account(s), including, but not limited to, those covered in the "Fees and Compensation" section of the Client Disclosure Brochure. I acknowledge that I have reviewed, understand and agree: (i) with the terms and information included in the SPS *Advantage* Wrap Fee Calculation Worksheet ("Worksheet"), including, but not limited to, the point totals relating to anticipated Account value, investment mix and strategy, trading activity and level of service; (ii) the Wrap Fee also pays for *Ameriprise* Financial Planning Service; (iii) that, depending on, among other things, trading activity, how long I hold, as well as the types of securities I purchase in my SPS *Advantage* Account, purchasing securities in an SPS *Advantage* Account may cost more or less than purchasing the same securities separately (outside of an SPS *Advantage* Account); (iv) to pay the negotiated Wrap Fee, and any other fees and expenses, that will be charged to my SPS *Advantage* Account; (v) that, if I hold more than one SPS *Advantage* Account within my household, I have the option to combine some or all such accounts for purposes of determining my Wrap Fee; (vi) that I have received and had an opportunity to review and ask of, and have answered by, my financial advisor or other Sponsor personnel, any questions I may have related to the Worksheet (including my option to have the Wrap Fee calculated using one, some or all of my SPS *Advantage* Accounts), Client Agreement, the applicable Disclosure Brochure and any applicable mutual fund (including fund of funds) prospectus; and (vii) to the level of service I will receive as part of my SPS *Advantage* Account.

## Transfer on Death Account Acknowledgements:

I, the owner of the listed account(s) desire to establish a Transfer on Death (TOD) designation pursuant to the Minnesota Uniform TOD Security Registration Act (the Act). Upon my death (or upon the death of the last survivor of us), Ameriprise Financial, Inc., Ameriprise Certificate Company, Ameriprise Financial Services, Inc., and American Enterprise Investment Services Inc., (individually or collectively "company") shall distribute my account according to the terms and conditions of this Agreement, filed at Ameriprise Financial, Inc.'s principal place of business in Minneapolis, Minnesota. In consideration of company acceptance of my TOD registration, I agree as follows:

1. **Secondary Beneficiaries.** I understand that if no survivorship provision is indicated in my TOD registration, any funds earmarked to a beneficiary who precedes me in death will be paid to my estate.



DOC0609N90614

2. **Exchanges.**
   (a) I authorize the company to accept instructions by telephone or in writing for exchanges among existing company accounts, regardless of whether the accounts have a different or no TOD registration.
   (b) I acknowledge and agree that this TOD registration shall apply to any new accounts established by me pursuant to a written or telephone exchange request with respect to the accounts listed in this Agreement.

3. **Change of Beneficiary.** I acknowledge and agree that any changes to an existing TOD registration previously created by me, and/or any newly created TOD registrations may be made only on a TOD Account Agreement.

4. **Previous TOD Registrations.** I acknowledge and agree that any TOD registration or Declaration of Revocable Trust previously created with respect to the account(s) listed, is hereby revoked.

5. **Fiduciaries.** I understand and acknowledge that no agent, attorney-in-fact, conservator, guardian, or other person acting in my behalf may name or change the beneficiaries, except if allowed in Power of Attorney document or by court order. This provision shall not prohibit the sale or pledge of my account by any agent, attorney-in-fact, conservator or guardian.

6. **Pledge of TOD Account.** I understand and acknowledge that if all or part of my account has been pledged, the pledgee has the right to change the registration of the portion of my account that has been pledged, including the right to cancel the designated TOD beneficiary.

7. **Lawful Children.** I understand and acknowledge that if "lawful children" is included in my TOD/POD registration, such registration shall be deemed to include any legitimate children born to or children legally adopted by me before or after the date of this Agreement whether or not listed by name on this Agreement. Step children and grandchildren are **not** considered lawful children covered under
   this designation.

8. **Payment of Dividends.** If applicable, I acknowledge and agree that the record date for the payment of a dividend from my account(s), rather than the date of declaration of such dividend, shall determine with reference to my death whether any particular dividend shall belong to me or to a beneficiary; provided, however, that all dividends may properly be paid to me until the issuer of the securities on which a dividend is being paid has received written notice of my death at its principal place of business.

9. **Effect of Other State Laws.** * I acknowledge and agree that if transfer on death registration is not permitted under the laws of the jurisdiction where I am domiciled at the time of my death, the company may, absent notice from any person claiming to have an interest in my account(s), distribute the account(s) pursuant to my TOD registration. In the event of such distribution, I agree that the company shall have all of the protections of the Minnesota Uniform TOD Security Registration Act, and I further agree to indemnify the company against and hold the company harmless from any and all claims, and the provisions of this paragraph shall be binding upon my heirs, legatees, executors, administrators, personal representatives, assigns and beneficiaries.

10. **Revocation of Beneficiary Designation by Will.** I understand and acknowledge that a revocation of this beneficiary designation in my will is not binding upon the company unless the company receives written notice from any claimant objecting to the transfer of securities pursuant to this Agreement, where state law permits and notification is given prior to settlement before such transfer is made.

11. **Governing Law.** This Agreement shall be governed by the laws of the State of Minnesota and shall inure to the benefit of the company and its successors and assigns, and shall be binding on me, my heirs, legatees, executors, administrators, personal representatives, assigns and beneficiaries.

12. **Security positions unable to be divided as designation states:** Security positions held in a brokerage account that are unable to be divided proportionately as designated due to the nature of the security(ies) will be liquidated, unless otherwise indicated, and proceeds thereof distributed to the beneficiary(ies).

13. **Payable on Death:** Upon receipt of proof of death of any account holder(s) and receipt of complete claim requirements at our office, all assets held in the Ameriprise® Personal Savings account will be transferred to the Ameriprise ONE Financial Account held by Ameriprise Financial Services, Inc. and will be settled to any beneficiaries, heirs or claimants as part of the cash position of the Ameriprise ONE Financial Account.

**The account holder(s) on the account may:** (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time on written notice to us. We reserve the right to determine if the documentation meets our Deposit Policy requirements to open an account.

**Ownership of an account and Beneficiary Designation:** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We reserve the right to refuse some forms of ownership on any or all of our accounts. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations except as they determine to whom we pay the account funds.

*TOD provisions are not available for residents of the state of Louisiana.



DOC0709N90614

**Appropriateness of SPS *Advantage*:** I acknowledge that I (i) will pay an asset-based fee instead of commissions or sales loads for each transaction; (ii) seek investment advice on specific assets and will pay for that advice; and (iii) will periodically purchase and sell mutual funds and/or other eligible securities in the account.

I understand that a high concentration of my investable assets dedicated to any one security/investment product could increase investment risk.

I acknowledge I am purchasing investments for my own account, and not with view to the distribution, assignment, transfer or other disposition of the investments.

**I understand that investment products are not federally or FDIC insured, are not deposits or obligations of, or guaranteed by, any financial institution, and involve investment risks including possible loss of principal and fluctuation in value.**

**I acknowledge that I have received and read the SPS *Advantage* Client Agreement (Version V, dated 03/16), the Managed Accounts and Financial Planning Service Combined Disclosure Brochure, the *Ameriprise* Brokerage Client Agreement, and the Other Important Brokerage Disclosures document, which are hereby incorporated by reference, and agree to abide by the terms and conditions as currently in effect or as they may be amended from time to time. I hereby consent to all these terms and conditions with full knowledge and understanding of the information contained in the Agreement. This account is governed by a predispute arbitration provision which is found in Section 28, Page 3 of the *Ameriprise* Brokerage Client Agreement and Section 23, Page 9 of the SPS *Advantage* Client Agreement. I acknowledge receipt of the predispute arbitration provision.**

I declare that all of the statement I made in this application are true and complete to the best of my knowledge and belief.

I acknowledge that I have received a copy of this application.

After AFSI processes my application, I agree that the Ameriprise Financial Planning Service will be in force and effective on the date I sign below.

**I understand that if my signed application is not dated when submitted, then the date you accept my account will be considered the date I agreed to the account services.**

**Brokerage, investment and financial advisory services are made available through Ameriprise Financial Services, Inc., Member FINRA and SIPC. Clearing, custody and settlement services are made available by American Enterprise Investment Services, Inc., Member FINRA and SIPC.**

### Important Documents to review prior to signature

The following document(s) must be given to the client(s) in order for you to be in compliance with product rules:

SPS Advantage Client Agreement (413074)
Ameriprise Managed Accounts and Financial Planning Service Combined Disclosure Brochure (402422)
Ameriprise Brokerage Client Agreement (402468)
Other Important Brokerage Disclosures (402469)
ADV Brochure Supplement - Compliance Tracker tool>Brochure Supplement tab

**Additional Required Documents**

• Provide the Ameriprise Privacy Notice to your client(s) found above the disclosures to give to client link.





DOC0809NS0614

**W-9 TIN Certification**

Check appropriate box for federal tax classification (required):

- ( ) Individual/Sole proprietor   ( ) Partnership

Corporation                        ( ) Trust
- ( ) C-Corporation                    ( ) Revocable (Optional Additional Trust Details)
- ( ) S-Corporation                    ( ) Irrevocable (Optional Additional Trust Details)

Limited Liability Company (LLC )       ( ) **Estate**
- ( ) C-Corporation                    ( ) **Other**
- ( ) S-Corporation
- ( ) Partnership

---

[ ] Check here if owner is an Exempt Payee
    (defined in Form W-9 instructions)

**Foreign Account Tax Compliance Act Reporting**
A FATCA exemption code is required for persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. If you are only submitting this form for an account you hold in the United States, no code is required. Otherwise, submit IRS Form W-9 separately.

---

As used below, the word "I" refers to the applicant who is the taxpayer on the account.
Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number, and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below), and
4. The payee is exempt from Foreign Account Tax Compliance Act (FATCA).

**Certification Instructions:**

As used below, the word "You" refers to the applicant who is the taxpayer on the account.
[ ] Check this box if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:
- An individual who is a U.S. citizen or U.S. resident alien,
- A Partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
- An estate (other than a foreign estate), or
- A domestic trust (as defined in Regulations section 301.7701-7).

Non-U.S. persons submit the appropriate Form W-8.
Form W-9 and Form W-8 and their instructions are available upon request or on irs.gov.

---

**The Internal Revenue Service does not require your consent to any provision of the document other than the certifications required to avoid backup withholding.**

---

Client 1/Taxpayer Name

A   _U P  Kan_        P   Kane

Client 1/Taxpayer Signature                    State      Date (MMDDYYYY)

X   _____              CT        _____

All owners of the AFPS account who have not signed above must also sign below when a new AFPS agreement is being established.

Account Holder, Executor, Principal or Trustee Name

A                              P   Kane



DOC0909N90614

Account Holder, Executor, Principal or Trustee Signature
X

State

Date (MMDDYYYY)

By signing below, I agree that I have provided the client with a copy of the:
- *Ameriprise* Managed Accounts and Financial Planning Service Combined Disclosure Brochure; and
- SPS *Advantage* Client Agreement, *Ameriprise* Brokerage Client Agreement, and Other Important Brokerage Disclosures

**Servicing Advisor Information**
Name
**Anthony Joseph Salerno**

Advisor ID
30306

Advisor Signature
X

Date (MMDDYYYY)
11/22/16

Phone
(203) 604-1127

Ext
0000

Branch Office Number
324

# Exhibit D



CED0104N93300

Ameriprise Financial Services, Inc. 70400 Ameriprise Financial Center Minneapolis, MN 55474

# Account Transfer

Note: Electronically submitting the following form(s) may create a follow-up request of an originally signed document. This will only take place if the transferring firm requires an original signature to complete the request.



Account Number
00079893534          133

Taxpayer Identification Number
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

Reference Number
ATI418566

## Ameriprise Account Information

| | |
|---|---|
| Account Number and Type: | **79893534 133 - SPS Advantage** |
| Ownership Type: | **A PATRICIA KANE TOD** |

## Delivering Firm Information

| | | |
|---|---|---|
| Delivering Firm: | **Merrill Lynch** | |
| Account Number: | **8C4-15961** | |
| Primary Account Holder: | **A Patricia Kane** | **/ 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** |
| Ownership Type: | **Single** | |

I/we acknowledge that this transfer request is between unlike ownerships and I/we understand that this transfer may change the registration on the account, beneficiary designations and may affect tax reporting liabilities.

## Transfer Instructions

| | |
|---|---|
| Type of Transfer: | **ACATS Full Account in Kind** |

## Acknowledgements

**Acknowledgements and Authorization to the Delivering Firm**

"I" refers to both the primary account holder and if applicable, the co-account holder. "You" refers to the delivering firm.

- I authorize and request either: a full, partial, or other transfer, as directed in the instructions, of the assets in my non-qualified accounts to American Enterprise Investment Services, Inc. or alternatively, if a qualified account, a full, partial, or other transfer, as directed in the instructions, of the assets in my qualified accounts to Ameriprise Trust Company and/or American Enterprise Investment Services, Inc. in its capacity as agent for Ameriprise Trust Company.
- If certificates or other instruments in my account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable Ameriprise Trust Company or American Enterprise Investment Services, Inc. to transfer them in its name for the purpose of the sale, when and as directed by me. I understand that to the extent any assets in my account are not readily transferable, with or without penalties, such assets may not be transferred within the timeframes required by FINRA or similar rule of FINRA or other designated examining authorities.

© 2014 - 2016 Ameriprise Financial, Inc.
All rights reserved.

 CED0204N93300

- I understand that fractional shares will be liquidated prior to transfer. If my shares are held in a dividend reinvestment plan, the plan will cease to exist and fractional shares will be liquidated.
- I authorize you to liquidate any nontransferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance, unless otherwise indicated in the instructions attached.
- I understand that upon receiving a copy of a full transfer instruction, you will cancel open orders and may restrict new orders until the transfer is complete. I affirm that I have destroyed or returned to you credit/debit cards and/or unused checks issued to me in connection with the account I have designated for transfer. I understand that a full transfer will discontinue all banking features on my delivering account and that any outstanding activity may not clear. I understand that dividend options may need to be re-established upon arrival of my assets at Ameriprise Financial.
- I authorize you to deduct any outstanding fees due you from the credit balance in my account. If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. I understand that you may charge an exit fee and that if my account does not contain sufficient cash to cover that fee, my account will transfer to American Enterprise Investment Services, Inc.with a debit balance.
- Until receiving documentation providing the principal and earnings portion of the 529 Plan transfer or rollover, Ameriprise will treat the entire amount of the contribution as earnings in the account receiving the contribution. Ameriprise will request principal and earnings from the delivering firm.

**Acknowledgements and Authorization**

"I" refers to both the primary account holder and if applicable, the co-account holder.

- I understand that requests to sell are dependent on the delivering firm accepting and processing this request. Specific sale time and price cannot be guaranteed. If I wish to sell at a specific time or price, I may consider selling directly with the delivering firm prior to transfer.
- I understand that not all firms honor written instructions to sell via transfer forms and may require additional paperwork and steps.
- I understand that any special arrangements (DRIP, dividend reinvestment options, systematic payments, bank authorizations, beneficiary designations, etc.) established with the delivering account may not transfer along with this request.
- I understand that account(s) to be opened for me at Ameriprise Financial Services, Inc. may be restricted until an executed application is received. I further understand that if an executed application is not received within 45 days of account opening, those restrictions will include a prohibition on new purchase transactions and the deposit or transfer in of cash or securities.
- I acknowledge receipt of and consent to all terms and conditions contained in the Ameriprise Brokerage Client Agreement and the Other Important Disclosures documents. I also acknowledge receipt of information relating to the third-party cash sweep program offered by Ameriprise Financial.





CED0304N93300

**W-9 TIN Certification**

Select appropriate federal tax classification (required - see IRS Form W-9 for additional instructions):

☑ Individual/Sole proprietor or Single Member LLC       ○ Partnership

**Corporation**                                                     ○ Trust

    ○ C-Corporation                                     ○ Revocable (Optional Additional Trust Details)

    ○ S-Corporation                                     ○ Irrevocable (Optional Additional Trust Details)

**Limited Liability Company (LLC )**                       ○ Irrevocable Grantor (Optional Additional Trust Details)

    ○ C-Corporation

    ○ S-Corporation                                     ○ Estate

    ○ Partnership                                        ○ Other

☐ Check here if owner is an Exempt Payee and supply the appropriate
exemption code. (Exemption codes apply to entities, not to individuals).
Refer to the list of exempt payee codes on Form W-9 at IRS.gov.            **Exempt Payee Code:**

**Foreign Account Tax Compliance Act (FATCA) Reporting**
A FATCA exemption code is required for persons submitting this form for certain accounts maintained outside of the United States at foreign financial institutions. If you are only submitting this form for an account you hold in the United States, no code is required and item #4 below does not apply. Otherwise, submit IRS Form W-9 separately.

As used below, the word "I" refers to the applicant who is the taxpayer on the account.

**Under penalties of perjury, I certify that:**
1. The number shown on this form is my correct taxpayer identification number, and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a US citizen or other U.S person, and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

☐ Check this box if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**Certification Instructions:**
As used below, the word "You" refers to the applicant who is the taxpayer on the account.

For cancellation of debt, contributions to an individual retirement arrangement (IRA) and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on Form or W-9 IRS.gov.

Please receive my securities account from the delivering firm identified in Delivering Firm Information and remit to it the debit balance or accept the credit balance in my securities account.

By Signing I authorize the parties to act on the instructions provided within this form

The Internal Revenue Service does not require your consent to any provision of the document other than the certifications required to avoid backup withholding.

Primary Account Holder Name

**A Patricia Kane**

CED0404N93300

Primary Account Holder Signature

X *(signature)*

Date (MMDDYYYY)

Advisor Name

**ANTHONY SALERNO**

Advisor ID

30306

## Letter of Acceptance (Corporate Use Only)

To the prior trustee or custodian: Ameriprise Trust Company is qualified under applicable regulations to act as custodian of IRA, 529 Plan or qualified plan assets and will deposit the assets we receive in either an IRA account, 529 Plan account or a qualified plan account, based on the instructions in Ameriprise Account Information, for the benefit of the individual.

☐ Direct Rollover     ☐ Custodial Transfer

Reference Number

Successor Custodian Signature

X

Date (MMDDYYYY)

# Exhibit E



CED0106111770

Ameriprise Financial Services, Inc. 70100 Ameriprise Financial Center Minneapolis, MN 55474

# Account Transfer and Direct Rollover

Ameriprise
Financial

 **Important: Before final submission to the Home Office you will need a Reference Number.**
- Return to the eForms – Account Transfer workflow and complete all steps to generate a Reference Number.
- Send either this signed form with the Reference Number written in the Reference Number field, or, sign and send via the workflow.
- If submitting this form, the Reference Number must be included.

| Account Number | |
|---|---|
| 79893534 | 133 |

Client ID

| 24196446   9 | 001 |
|---|---|

Reference Number

ATI

 • This form should be used to transfer into Brokerage products. If the intent is to transfer in to an *Ameriprise* Certificate, RiverSource Life Annuity or Columbia mutual fund product, use Form 200808. For transfers to non-qualified *Ameriprise* Certificates, use Form 3057.
• **Direct Rollovers:** Always consult your employer or plan administrator for requirements pertaining to direct rollovers. Do not submit this form, if you are working directly with the plan administrator.
• **If more than one destination account is to be requested,** we will require (1) form per account, the transfers should be marked as "Partial Transfers" in Part 3.
• If the transfer contains any Over the Counter (OTC) security positions consisting of 10,000 or more shares, the Security Deposit Form 402432, is required to determine the security's eligibility at Ameriprise. For additional details, please refer to Compliance Manual 9.2.11 Depositing or Transferring Securities.
• **529 Plans:** Receiving account must be an Ameriprise Brokerage 529 account. This form is not to be used for transfers or rollovers into 529 accounts held directly at a 529 firm. To transfer or rollover into a 529 account held directly at a 529 firm, contact the firm directly for appropriate paperwork.

Clearing # 0756

*NOTE:* Electronically submitting the following form(s) may create a follow-up request of an originally signed document. This will only take place if the transferring firm requires an original signature to complete the request.

## Part 1   *Ameriprise*® Account Information

**Account Registration**

| Account Number | | Account Registration | Tax Identification Number (TIN) |
|---|---|---|---|
| 79893534 | 133 | A PATRICIA KANE TOD | 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 |

**Ameriprise Ownership Type** (Select One)

"Select an account that corresponds to the account type at Ameriprise Financial."

**Non-Qualified**
- ● Single
- ○ Joint
- ○ Other                                              *Non-Qualified - Other*

**Qualified**
- ○ Traditional IRA
- ○ Rollover IRA
- ○ Other
- ○ Roth IRA
- ○ SEP IRA
- ○ SIMPLE IRA                              *Qualified - Other*

**529 Plan**
- ○ 529 Plan
  Receiving account must be an Ameriprise Brokerage 529 account.          *Plan Name*

Sign on Page 6

© 2009 - 2017 Ameriprise Financial, Inc.
All rights reserved.



CED0206111770

## Part 2    Delivering Firm Information

Attach a copy of your most recent statement dated within the last 90 days.
*Current account statements provide critical information for the Account Transfer department, and failure to submit a current statement may delay your transfer request.*
*For 529 Plans a statement or documentation issued by the distributing college savings program that shows the current principal and earnings. In the case of any direct transfer between college savings programs, the distributing program must provide the receiving program with a statement setting forth this information.*

**Account Number:** Provide the delivering account number to be transferred. A separate form should be submitted for each delivering account to be transferred unless the delivering firm is a mutual fund family. If all the accounts(s) being transferred have the same owner and registration and are currently held directly with a mutual fund family, you can submit up to four accounts on this form and additional copies of page one can be used, if necessary.

**Account Registration:** Provide the full name(s) of account owner(s) of the account to be transferred.

**Social Security Number or TIN:** Provide the primary Social Security Number or Tax Identification Number (TIN) listed on the account to be transferred and for accounts with a Co Account holder, TTEE, Guardian, or Custodian the secondary Social Security Number or Tax Identification Number that may be associated with the account to be transferred.

**Name of Delivering Firm:** Provide the name of the delivering institution and include the address and contact information for the delivering firm.

**Ownership Type:** Select one option only that corresponds to the account type of the account to be transferred.

*Note:* When transferring between unlike ownerships, even if all owners of delivering and receiving accounts have signed the form and checked the box authorizing a transfer between unlike ownerships, the delivering firm may still reject the transfer and require that the ownership of one of the accounts be changed before the transfer can be completed.

| Account Number | Account Registration |
|---|---|
| 011-917408-737 | Agnes Patricia Kane |

**Primary Account Holder Name**
A. Patricia                    Kane

Tax Identification Number
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

**Co Account Holder / TTEE / Guardian / Custodian Name / 529 Beneficiary**    Tax Identification Number

**Delivering Firm Name**
Morgan Stanley

**Delivering Firm Address**
1585 Broadway

Phone Number
860-231-9849

**City**
New York

State  ZIP code
NY   10080

### Ownership Type *(Select One)*

**Non-Qualified**
- ⊗ Single
- ○ Joint
- ○ Other

**Qualified**
- ○ Traditional IRA
- ○ Rollover IRA
- ○ Other
- ○ Roth IRA
- ○ SEP IRA
- ○ SIMPLE IRA

*Non-Qualified - Other*

*Qualified - Other*

**529 Plan**
- ○ 529 Plan

Receiving account must be an Ameriprise Brokerage 529 account.

*Plan Name*

Current 529 assets are held in:
- ○ Advisor sold plan - typically share classes that charge a sales load
- ○ Direct sold plan - typically no load share classes

## Part 3    Transfer Instructions

**Direct Rollovers:** Consult the former employer or plan administrator for requirements prior to submitting this to the corporate office. Many plans require their own distribution paperwork.
A Direct Rollover is generally defined as the direct movement of assets from one eligible retirement plan (including an IRA) to another eligible retirement plan. (Note: If both eligible retirement plans are the same type, such as 2 IRAs, then the movement may be defined as a Transfer rather than as a Direct Rollover.). The IRA owner or plan participant does not take constructive receipt of the proceeds. Instead, they are paid directly to the new Qualified Plan or IRA as a company to company transaction. There is no withholding requirement since the client does not touch the proceeds. A triggering event must be met before a distribution can be made from a Qualified Plan.

*Transfer Instructions continued on next page.*



CED0306111770

## Transfer Instructions continued

*Select one option from either 'Brokerage Account', 'Non-Brokerage Account', or '529 Plan'.*

### From a Brokerage Account

(i)
- **Examples of brokerage account:** Retail Brokerage, Wrap Products, Separately Managed Accounts, etc.
- Liquidation requests not accepted. (ACATS Transfers, if eligible)

◉ Full Account In Kind   ○ Partial Account In Kind - Complete Table A
*Note: Each individual asset in Table A must be marked "In Kind."*

### From Non-Brokerage Account

(i)
- **Examples of non-brokerage account:** Fund Families, Banks, Life Insurance/Annuity Companies, Trust Companies, Transfer Agents, etc.
- Liquidation requests accepted. (Non ACATS Transfers)

○ Full Account In Kind    ○ Full Account Liquidation    ○ Other - Complete Table A, if applicable
                          *Note: If an Annuity, penalties may apply.*    *Note: Each individual asset in Table A must be marked "In Kind" or "Sell."*

○ The Penalty Free Amount available or complete Table A, for a specific dollar amount (This option is a partial transfer, for Annuities only).

If the Client's request is to surrender the entire Annuity and it is 100% penalty free, this would be considered a Full Account Liquidation.

**If this Non-Brokerage Account is a CD** (indicate when the liquidation is to take place):
*Note: You must indicate if this is a full or partial transfer by choosing either 'Full Account Liquidation' or 'Other' above.*

○ Prior to maturity (penalties may apply)

○ At maturity date: |                    *(Maturity date must be within 60 calendar days of signing this form)*

### From a 529 Plan

(i)
- If transferring between different 529 plans, select Full Account Liquidation and complete the 529 Plan Rollover Investment Allocation table.
- If transferring between the same 529 plans and the plan is offered in Ameriprise Brokerage, select either 'Full Account In Kind', 'Full Account Liquidation', or 'Other'. If full account liquidation, complete the 529 Plan Rollover Investment Allocation table.

○ Full Account In Kind    ○ Full Account Liquidation    ○ Other - Complete Table A, if applicable
                          (Complete the 529 Plan Rollover    (If selling asset listed in Table A, complete 529 Plan
                          Investment Allocation Table)    Rollover Investment Allocation Table with investment
                                                          instructions.)

(i) American Funds Class A shares are eligible for transfer into Wrap Products only if from another Broker Dealer via ACATS, and are ineligible via Manual transfers per the American Funds Policy.

**Table A** - Attach a separate sheet if additional assets

| Asset Description | Ticker/CUSIP | Quantity *"All" or Number of Shares* | Handling *(Select One)* In Kind, Sell | Fund Account Number *(If at Fund Family)* |
|---|---|---|---|---|
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |
|  |  |  | ○ ○ |  |

(i) Note to Advisor: Please refer to the list of ACATS eligible firms on the *AdvisorCompass*® portal. These can be found by searching for the keywords "ACATS Eligible Firms" in the search box at the top of AdvisorCompass® portal. ACATS pertains only to brokerage accounts. Brokerage accounts are able to hold cash, equities, mutual funds, etc. If you look at the statement and the account is held with a mutual fund family (BlackRock, Oppenheimer, MFS, etc) the account will not be ACATS eligible. The appropriate box to check would be Non-Brokerage Account.If the client wishes to liquidate a CD or annuity held at a Non ACATS eligible firm, the form will need to be marked to either liquidate at maturity or prior to maturity.

*Transfer Instructions continued on next page.*

 

CED0406111770

**Transfer Instructions** continued

---

**529 Plan Rollover Investment Allocation**

(i) Certain 529 plans may offer to waive applicable sales charges in the instance of a qualifying rollover. If the funds associated with this rollover are eligible for such a program Ameriprise Financial Services, Inc. will affect your investment elections in class A shares at Net Asset Value (NAV), upon receipt of funds per the instructions below.

| Asset Description | Ticker/CUSIP | Percentage | Solicited |
|---|---|---|---|
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |
| | | | ( ) Solicited   ( ) UnSolicited |

No purchase of shares will occur until we receive the proceeds of any liquidation or transfer of existing assets. Any rounding balances will be applied to the final CUSIP listed.

---

**Part 4**  **Acknowledgements and Authorization to the Delivering Firm**

 "I" refers to the primary account holder and if applicable, the co-account holder. "You" refers to the delivering firm.

- I authorize and request either: a full, partial, or other transfer, as directed in the instructions, of the assets in my Non-Qualified accounts or 529 Plan to American Enterprise Investment Services, Inc. or if a Qualified account, a full, partial, or other transfer, as directed in the instructions, of the assets in my qualified accounts to Ameriprise Trust Company and/or American Enterprise Investment Services, Inc. in its capacity as agent for Ameriprise Trust Company.
- If physical certificates or other instruments in my account are in your possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable Ameriprise Trust Company or American Enterprise Investment Services, Inc. to transfer them in its name for the purpose of the sale, when and as directed by me. I understand that to the extent any assets in my account are not readily transferable, with or without penalties, such assets may not be transferred within the timeframes required by FINRA or similar rule of FINRA or other designated examining authorities.
- I understand that fractional shares will be liquidated prior to transfer. If my shares are held in a dividend reinvestment plan, the plan will cease to exist and fractional shares will be liquidated.
- I authorize you to liquidate any nontransferable proprietary money market fund assets that are part of my account and transfer the resulting credit balance, unless otherwise indicated in the instructions attached.
- I understand that upon receiving a copy of a full transfer instruction, you will cancel open orders and may restrict new orders until the transfer is complete. I affirm that I have destroyed or returned to you any credit/debit cards and/or unused checks issued to me in connection with the account I have designated for transfer. I understand that a full transfer will discontinue all banking features on my delivering account and that any outstanding activity may not clear. I understand that dividend options may need to be re-established upon receipt of my assets at Ameriprise Financial.
- I authorize you to deduct any outstanding fees due you from the credit balance in my account. If my account does not contain a credit balance, or if the credit balance in the account is insufficient to satisfy any outstanding fees due you, I authorize you to liquidate the assets in my account to the extent necessary to satisfy that obligation. I understand that you may charge an exit fee and that if my account does not contain sufficient cash to cover that fee, my account will transfer to American Enterprise Investment Services, Inc. with a debit balance.

CED0506111770

### Part 5   W-9 TIN Certification

**W-9 TIN Certification**

Select appropriate federal tax classification (required - see IRS Form W-9 for additional instructions):

- ⦿ Individual/Sole proprietor or Single Member LLC
- ○ Partnership

Corporation
- ○ C-Corporation
- ○ S-Corporation

- ○ Trust
  - ○ Revocable (Optional Additional Trust Details)
  - ○ Irrevocable (Optional Additional Trust Details)
  - ○ Irrevocable Grantor (Optional Additional Trust Details)

Limited Liability Company (LLC)
- ○ C-Corporation
- ○ S-Corporation
- ○ Partnership

- ○ Estate
- ○ Other

☐ Check here if owner is an Exempt Payee and supply the appropriate exemption code. (Exemption codes apply to entities, not to individuals). Refer to the list of exempt payee codes on Form W-9 at IRS.gov.

Exempt Payee code: _____

**Foreign Account Tax Compliance Act (FATCA) Reporting**

A FATCA exemption code is required for persons submitting this form for accounts maintained outside of the United States at foreign financial institutions. If you are only submitting this form for an account you hold in the United States, no code is required and item #4 below does not apply. Otherwise, submit IRS Form W-9 separately.

As used below, the word "I" refers to the applicant who is the taxpayer on the account

Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number, and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person (defined below), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

☐ Check this box if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

**Certification Instructions:**

As used below, the word "You" refers to the applicant who is the taxpayer on the account.

For cancellation of debt, contributions to an individual retirement arrangement (IRA) and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on Form W-9 on IRS.gov.

### Part 6   Signatures



- All owners/individuals with an interest in any account identified in Part 1 and/or Part 2, must sign and date below to authorize a direct rollover or transfer transaction.
- Please allow at least 30 days for receipt of assets with Non-ACATS account transfers.
- Ameriprise generally will not accept transfers of large holdings of low priced securities. You may be requested to fill out a Security Deposit Form for review prior to acceptance of any security subject to this policy. Ameriprise will determine in its sole and exclusive discretion whether or if it will accept any specific low-priced security.

- I understand that account(s) to be opened for me at Ameriprise Financial Services, Inc. may be restricted until an executed application is received. I further understand that if an executed application is not received within 45 days of account opening, those restrictions will include a prohibition on new purchase transactions and the deposit or transfer in of cash or securities.
- I acknowledge receipt of and consent to all terms and conditions contained in the Ameriprise Brokerage Client Agreement and the Other Important Disclosures documents. I also acknowledge receipt of information relating to the third-party cash sweep program offered by Ameriprise Financial.
- I understand that requests to sell are dependent on the delivering firm accepting and processing this request. Specific sale time and price cannot be guaranteed. I understand that if I wish to sell at a specific time or price, I should consider selling directly with the delivering firm prior to transfer.
- I understand that not all delivering firms will honor written instructions to sell via transfer forms, and may require additional steps or documentation.
- I understand that any special arrangements (Dividend Reinvestment Options (DRIP), Systematic Payments, Bank Authorizations, Beneficiary Designations, etc.) established at the delivering firm for my account(s) may not transfer with this request, and it is my obligation to review my account(s) to make certain that such arrangements have been established.
- I acknowledge that this transfer request may be between unlike ownerships and I/we understand that this transfer may change the registration on the account, beneficiary designations and may affect tax reporting liabilities.
- If this transfer involves 529 Plan Rollover Investment Allocation elections, I understand that no purchase of shares in a 529 Plan will occur until the liquidation proceeds are received by American Enterprise Investment Services, Inc.. and credited to the 529 Plan.

Signatures continued on next page...



CED0606111770

## Signatures continued

- I understand that until I or the previous firm provides to American Enterprise Investment Services, Inc. (AEIS) documents identifying the principal and earnings of the 529 Plan transfer or rollover, AEIS will treat the entire amount received as earnings in the account that receives the contribution. AEIS will request principal and earnings information from the delivering firm for any 529 Plan transfer or rollover.

Please receive my securities account from the delivering firm identified in Part 2 and remit to it the debit balance or accept the credit balance in my securities account.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

By signing, I authorize the parties to act on the instructions provided within this form.

Primary Account Holder Name

A _____ P Kane

Primary Account Holder Signature

X *U. Patricia Kane*                    Date (MMDDYYYY) 2/20/18

Co-Account Holder Name

Co-Account Holder Signature (if applicable)

X                                        Date (MMDDYYYY)

403(b) or Qualified Administrator Name

403(b) or Qualified Administrator Signature (if applicable)

X                                        Date (MMDDYYYY)

Advisor Name

Anthony Joseph Salerno

Advisor ID

30306

## Letter of Acceptance (Corporate Use Only)

To the prior trustee or custodian: Ameriprise Trust Company is qualified under applicable regulations to act as custodian of IRA, 529 Plan or qualified plan assets and will deposit the assets we receive in either an IRA account, 529 Plan account or a qualified plan account, based on the instructions in Part 1, for the benefit of the individual.

☐ Direct Rollover    ☐ Custodial Transfer                Reference Number

Successor Custodian Signature

X                                        Date (MMDDYYYY)

DOCKET NO.: _____

| | | |
|---|---|---|
| PATRICIA KANE MAGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | SUPERIOR COURT |
| | ) | |
| vs. | ) | JUDICIAL DISTRICT OF |
| | ) | |
| AMERIPRISE FINANCIAL SERVICES, LLC, | ) | STAMFORD/NORWALK |
| AMPF HOLDING, LLC, | ) | |
| ANTHONY JOSEPH SALERNO, AND | ) | AT STAMFORD |
| JAMES J. FLAHERTY JR. | ) | |
| | ) | DECEMBER 27, 2021 |
| Defendants. | ) | |
| | ) | |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand in this action is more than Fifteen Thousand Dollars ($15,000)

exclusive of interest and costs.

By; */s/ Joseph M. Pastore III*
Joseph M. Pastore III
Leanne M. Shofi
Paul Fenaroli
Pastore LLC
Juris No: 433711
4 High Ridge Park, 3rd Floor
Stamford, CT 06905
203.658.8454 tel
203.717.5550 fax
jpastore@pastore.net
lshoft@pastore.net
pfenaroli@pastore.net
*Attorneys for Plaintiff*