## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PATRICIA KANE MAGUIRE,
*Plaintiff,*

v.

AMERIPRISE FINANCIAL SERVICES,
LLC; AMPF HOLDING, LLC; ANTHONY
JOSEPH SALERNO; and JAMES J.
FLAHERTY, JR.,
*Defendants.*

No. 3:22-cv-0128 (VAB)

## RULING AND ORDER ON MOTIONS

Patricia Kane Maguire ("Plaintiff") has sued Ameriprise Financial Services, LLC

("Ameriprise"), AMPF Holding, LLC ("AMPF Holding"), Anthony Joseph Salerno, and James

J. Flaherty, Jr. (collectively, "Defendants"), alleging wrongful disinheritance from her mother's

estate. *See* Ex. 1 to Notice of Removal ¶¶ 1–4, ECF No. 1-1 (Dec. 27, 2022) ("Compl."). These

claims arise under several Connecticut state law statutes related to fraud, forgery, and theft, as

well as the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et.*

*seq.* ("RICO"). Compl.; *see also* Am. Compl., ECF No. 51 (Apr, 13, 2022) ("Am. Compl.").

Ms. Maguire originally filed suit in Connecticut Superior Court, the Judicial District of

Stamford/Norwalk. *See* Notice of Removal, ECF No. 1 (Jan. 24, 2022). On January 24, 2022,

Defendants removed the case to federal court. *Id.*

On January 24, 2022, Ms. Maguire filed a motion for a prejudgment remedy, temporary

injunction, preliminary injunction, and order to show cause.[1] *See Ex Parte* Appl. for

---

[1] This motion originally was filed in state court on January 10, 2022. *See* Pl. Mot.

Prejudgment Remedy, Temporary Inj., Prelim. Inj., and Order to Show Cause, ECF No. 6 (Jan 24, 2022) ("Pl. Mot.").

On February 24, 2022, Ameriprise, AMPF Holding, and Mr. Salerno (collectively, the "Ameriprise Defendants") moved for an order, under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., to compel arbitration on Ms. Maguire's claims and to stay the proceedings, *see* Ameriprise Defs.' Mot. to Compel Arbitration and Stay Proceedings, ECF No. 30 (Feb. 24, 2022) ("Mot. to Compel").

For the reasons explained below, the Court **DENIES** the motion for a prejudgment remedy, preliminary injunction, temporary injunction, and order to show cause due to a lack of jurisdiction. The Court also **DENIES** the motion to compel arbitration on the same grounds.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from allegedly fraudulent transactions related to the will of Ms. Maguire's late mother, Agnes Patricia Kane (the "Decedent"), who died on January 22, 2019. *See* Compl. ¶¶ 1–4; Am. Compl. ¶¶ 1–7. On December 27, 2021, Plaintiff filed a Complaint in Connecticut Superior Court to challenge Defendants' alleged wrongful exclusion of Ms. Maguire as a beneficiary of Ms. Kane's estate and of monies held in an account controlled by Defendants (the "Ameriprise account"). Compl.

The first of the Complaint's nine counts is directed solely at the Ameriprise Defendants and alleges statutory theft in violation of Conn. Gen. Stat. § 52-564 (First Count). The remainder are directed at both the Ameriprise Defendants and the co-defendant, James J. Flaherty, Jr. ("Flaherty"), and allege claims for conspiracy to commit statutory theft, in violation of Conn. Gen. Stat § 52-564 (Second Count); aiding and abetting statutory theft (Third Count); forgery, in violation of Connecticut's civil forgery statute, Conn. Gen. Stat § 52-565 (Fourth Count);

conspiracy to commit forgery (Fifth Count); aiding and abetting forgery (Sixth Count); common-law fraud (Seventh Count); violating RICO (Eighth Count); and violating the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* ("CUTPA") (Ninth Count).[2]

On January 24, 2022, Defendants removed this suit to federal court. Notice of Removal, ECF No. 1 (Jan. 24, 2022).

On the same day, Ms. Maguire filed a motion for prejudgment remedy, temporary injunction, preliminary injunction, and an order to show cause, which had originally been filed in state court. Pl. Mot.

On January 27, 2022, the case was transferred from Judge Robert N. Chatigny to this Court. *See* Order of Transfer, ECF No. 18 (Jan. 27, 2022). The following day, a conference with the parties was scheduled. *See* Order, ECF No. 19 (Jan. 28, 2022).

On January 31, 2022, the parties appeared for a scheduling and status conference. *See* Min. Entry, ECF No. 21 (Jan. 31, 2022). Following that proceeding, the Court ordered the parties to file a joint status report regarding the status of Plaintiff's separate but related action currently pending in Connecticut Superior Court by February 7, 2022. *See* Scheduling Order, ECF No. 22 (Jan. 31, 2022); *see also Maguire v. Kane*, No. FST-CV20-6048808-S (Conn. Super. Ct. Oct. 13, 2020). The Court further ordered Defendants to respond to the motion for a prejudgment remedy,

---

[2] The Amended Complaint contains the following counts: (1) statutory theft in violation of Conn. Gen. Stat § 52-564 against the Ameriprise Defendants; (2) conspiracy to commit statutory theft against all Defendants; (3) aiding and abetting statutory theft against the Ameriprise Defendants; (4) aiding and abetting statutory theft against Mr. Flaherty individually; (5) forgery in violation of Conn. Gen. Stat § 52-565 against the Ameriprise Defendants; (6) forgery in violation of Conn. Gen. Stat § 52-565 against Mr. Flaherty individually; (7) conspiracy to commit forgery against all Defendants; (8) aiding and abetting forgery against the Ameriprise Defendants; (9) aiding and abetting forgery against Mr. Flaherty; (10) fraud against the Ameriprise Defendants; (11) fraud against Mr. Flaherty individually; (12) violation of RICO against all Defendants; (13) violation of CUTPA against all Defendants; (14) negligence against Ameriprise Defendants; (15) negligence against Mr. Flaherty individually; (16) legal malpractice against Mr. Flaherty; (17) breach of contract against Mr. Flaherty. *See* Am. Compl.

temporary injunction, and preliminary injunction by February 14, 2022. *See* Scheduling Order, ECF No. 22 (Jan. 31, 2022).

On February 7, 2022, the parties submitted a joint status report regarding the related state court matter. Joint Status Report, ECF No. 26 (Feb. 7, 2022). Ms. Maguire reported that settlement negotiations remained ongoing in that related matter but that she wished to proceed with adjudication of the motion for a prejudgment remedy, temporary injunction, preliminary injunction, and order to show cause in this proceeding. *Id.* Consistent with Defendants' request in that motion, *see id.*, the Court extended the deadline for Defendants to respond to the motion for a prejudgment remedy, temporary injunction, preliminary injunction, and order to show cause, *see* Order, ECF No. 27 (Feb. 8, 2022).

On February 24, 2022, the Ameriprise Defendants filed a motion to compel arbitration. *See* Ameriprise Defs.' Mot. to Compel Arbitration and Stay Proceedings, ECF No. 30 (Feb. 24, 2022). In support of their motion, the Ameriprise Defendants submitted an affidavit by Mr. Salerno. *See* Decl. of Anthony Salerno, ECF No. 30-2 (Feb. 24, 2022). The affidavit provided as an attachment the Decedent's Ameriprise Advantage and Financial Services Planning Account application, which incorporates an SPS Advantage Client Agreement ("SPS Agreement") and Brokerage Agreement. *See id.* ¶¶ 13–15; *see also* Ex. A-2 to Decl. of Anthony Salerno, ECF No. 30-4 (Feb. 24, 2022) ("SPS Agreement"); Ex. A-3 to Decl. of Anthony Salerno, ECF No. 30-5 (Feb. 24, 2022) ("Brokerage Agreement"). Both the SPS and Brokerage Agreements contain a pre-dispute arbitration provision. SPS Agreement § 23; Brokerage Agreement § 28.

On March 17, 2022, Ms. Maguire opposed the Ameriprise Defendants' motion to compel arbitration. *See* Pl.'s Opp'n to Defs.' Mot. to Compel Arbitration and Stay Proceedings, ECF No. 44 (Mar. 17, 2022).

On March 1, 2022, Ms. Maguire filed a motion for disclosure of assets. *See* Mot. for Disclosure of Assets, ECF No. 32 (Mar. 1, 2022). Mr. Flaherty objected to this motion. *See* Att'y Flaherty's Obj. to Pl.'s Mot. for Disclosure of Assets, ECF No. 34 (Mar. 3, 2022).

The following day, on March 2, 2022, Mr. Flaherty moved for an extension of time to file a responsive pleading to the motion for a prejudgment remedy, temporary injunction, preliminary injunction, and order to show cause until thirty days from the date of the Court's ruling on the motion to compel arbitration and stay proceedings. *See* Mot. for Ext. of Time, ECF No. 33 (Mar. 2, 2022). Plaintiff objected to this request. *See* Pl.'s Opp'n to Def. Flaherty's Mot. for Ext. of Time, ECF No. 34 (Mar. 3, 2022).

On March 3, 2022, the Ameriprise Defendants moved for an extension of time until thirty days from a ruling on the motion to compel arbitration to meet and confer regarding, and then file, a Rule 26(f) report. Defs.' Mot. for Ext. of Time, ECF No. 35 (Mar. 3, 2022).

On March 14, 2022, consistent with a request from the parties, *see* Req. for a Status Conf. on Consent of All Parties, ECF No. 36 (Mar. 3, 2022), the Court held a status conference with the parties on the outstanding scheduling issues, *see* Min. Entry, ECF No. 42 (Mar. 14, 2022). Following that conference, the Court granted the motion to extend the Rule 26(f) report deadline and required a responsive pleading from Mr. Flaherty by March 28, 2022. *See* Order, ECF No. 43 (Mar. 14, 2022).

On March 18, 2022, Defendants filed responses to Ms. Maguire's motion for a prejudgment remedy. *See* Ameriprise Defs.' Resp. to Pl.'s Appl. for Prejudgment Remedy, Temporary Inj., Preliminary Inj. and Order to Show Cause, ECF No. 45 (Mar. 18, 2022); James J. Flaherty Jr.'s Resp. to the Pl.'s Appl. for Prejudgment Remedy, Temporary Inj., Prelim. Inj., and Order to Show Cause, ECF No. 46 (Mar. 18, 2022).

On March 25, 2022, Mr. Flaherty filed a motion to dismiss Counts Two through Nine of the Complaint for failure to state a claim upon which relief can be granted. *See* Mot. to Dismiss of James J. Flaherty, Jr., ECF No. 47 (Mar. 25, 2022); Mem. of Law in Supp. of Mot. to Dismiss of James J. Flaherty, Jr., ECF No. 47-1 (Mar. 25, 2022) ("Mot. to Dismiss").

On March 31, 2022, the Ameriprise Defendants filed a reply in further support of their motion to compel arbitration. *See* Ameriprise Defs.' Reply to Pl.'s Opp'n to the Mot. to Compel Arbitration and Stay Proceeding, ECF No. 48 (Mar. 31, 2022) ("Reply").

On April 1, 2022, Ms. Maguire filed a reply in further support of her motion for a prejudgment remedy. *See* Pl.'s Reply to Flaherty's Resp. to Pl.'s Appl. for Prejudgment Remedy, Temporary Inj., Prelim. Inj. and Order to Show Cause, ECF No. 50 (Apr. 1, 2022).

On April 13, 2022, Ms. Maguire filed an Amended Complaint. *See* Am. Compl.

On April 25, 2022, the Court advised the parties that it intended, at oral argument, to review whether the civil RICO claim conferred subject matter jurisdiction on the Court, and granted the parties leave to file additional briefing on this issue, if desired. *See* Notice, ECF No. 56 (Apr. 25, 2022).

On April 26, 2022, Defendants requested the opportunity for additional briefing. *See* Notice of Req. to File Additional Br. Regarding RICO Claim, ECF No. 61 (Apr. 26, 2022); Ameriprise Defs.' Notice Req. Aditional [sic] Briefing Regarding RICO Claim, ECF No. 62 (Apr. 26, 2022). Ms. Maguire did not request additional briefing, and, instead, filed a revised RICO Case Statement. *See* RICO Case Statement, ECF No. 59 (Apr. 25, 2022) ("RICO Case Statement").

In light of Defendants' request for additional briefing, the Court continued oral argument on the pending motions. *See* Order, ECF No. 63 (Apr. 26, 2022).

On April 27, 2022, the Ameriprise Defendants filed a supplemental motion to compel arbitration and stay the proceedings. *See* Ameriprise Defs.' Renewed Mot. to Compel Arbitration and Stay Proceedings, ECF No. 65 (Apr. 27, 2022) ("Second Mot. to Compel").

On May 6, 2022, Defendants filed additional briefing regarding the civil RICO claim in this case. *See* Ameriprise Defs.' Br. in Supp. of Their Position That the Plaintiff's RICO Count is Frivolous and Should Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1), ECF No. 66 (May 6, 2022) ("Ameriprise Defs.' Suppl. Br."); Br. of Def. James J. Flaherty, Jr. Re: Whether Plaintiff's RICO Claim Confers Subject Matter Jurisdiction on the Court, ECF No. 67 (May 6, 2022) ("Flaherty Suppl. Br.").

On May 16, 2022, Ms. Maguire filed a response to Defendants' additional briefing on the civil RICO claim. *See* Pl.'s Reply to Defs.' Brs. On the Issue of Whether Plaintiff's [sic] RICO Claim Confers Subject Matter Jurisdiction on the Court, ECF No. 70 (May 16, 2022) ("Suppl. Reply").

On May 18, 2022, the Court held oral argument. *See* Min. Entry, ECF No. 71 (May 18, 2022). In that proceeding, the Court granted leave to Mr. Flaherty to file a notice of supplemental authority by May 19, 2022, and further provided Ms. Maguire with an opportunity to respond by May 24, 2022. Order, ECF No. 72 (May 18, 2022).

On May 19, 2022, Mr. Flaherty filed a notice of supplemental authority regarding the predicate act component of Ms. Maguire's civil RICO claim. *See* Notice of Suppl. Authority re: Whether Plaintiff's RICO Claim Confers Subject Matter Jurisdiction on the Court, ECF No. 73 (May 19, 2022).

On May 24, 2022, Ms. Maguire filed a response. Pl.'s Reply to Def. James J. Flaherty Jr.'s Notice of Suppl. Authority, ECF No. 74 (May 24, 2022).

## II.    STANDARD OF REVIEW

### A.  Preliminary Injunctive Relief

Preliminary injunctive relief "is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To show entitlement to a preliminary injunction, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks and citation omitted). To demonstrate irreparable harm, Plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983) (injunctive relief cannot be provided if claimed injury is speculative or remote).

### B.  Federal Arbitration Act

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . .  shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Section 4 of the FAA enables any "party aggrieved" by the failure of another to arbitrate under a written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Courts follow a two-part test to determine whether claims are subject to arbitration, considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "A court may not deny arbitration where there is a valid arbitration agreement that covers the asserted claims." *Davis v. Macy's Retail Holdings, Inc.*, No. 3:17-CV-1807 (JBA), 2018 WL 4516668, at *2 (D. Conn. Sept. 19, 2018) (citation omitted).

In the context of a motion to compel arbitration brought under the FAA, courts apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10-CV-1488 (WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011) (applying summary judgment standard in the context of a motion to compel arbitration). The party seeking to compel arbitration must "substantiat[e] [its] entitlement [to arbitration] by a showing of evidentiary facts" that support its claim that the other party agreed to arbitration. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* (citation omitted). If the evidence suggests a genuine issue of material fact, the court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997))).

## III.    DISCUSSION

### A.  Motion for Prejudgment Remedy, Preliminary Injunction, Temporary Injunction, and Order to Show Cause

The Court first turns to the pending motion for a prejudgment remedy, preliminary injunction, temporary injunction, and order to show cause.[3] To adjudicate a motion for a preliminary injunction, the Court must have an independent basis for asserting jurisdiction. *See Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 384 (E.D.N.Y. 2016) ("[A]s is true of civil actions generally, an independent basis for asserting federal question or diversity jurisdiction must be shown, in order for a court to grant preliminary relief." (citing 11A Fed. Prac. & Proc. Civ. § 2941 (3d ed.) (internal quotation marks omitted))); *see also Belcher v. Wells Fargo Bank NA*, 377 F. App'x 59, 60 (2d Cir. 2010) (summary order) (affirming denial of motion for a preliminary injunction where plaintiff "has asserted no federal claim that is sufficiently substantial to support federal question jurisdiction under 28 U.S.C. §

---

[3] Whether preliminary injunctive relief should issue necessarily precedes any discussion regarding the motion to compel arbitration. *See Am. Express. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) ("[C]ourts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration." (citation omitted)); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015) ("Where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration." (citation omitted)).

1331"); *Savoie v. Merchs. Bank*, 84 F.3d 52, 57 (2d Cir. 1996) (In a motion for a preliminary

injunction, "[t]he plaintiff is required to adequately establish that there is at least a reasonable

probability of ultimate success upon the question of jurisdiction when the action is tried on the

merits." (internal quotation marks and citation omitted)). The Court raises the issue of subject

matter jurisdiction *sua sponte*.[4] *See McLearn v. Cowen & Co.*, 660 F.2d 845, 848–49 (2d Cir.

1981) ("It is well settled that a court may raise the issue of subject matter jurisdiction at any

time, *sua sponte*." (emphasis added)).

It is apparent from the Amended Complaint that the plaintiff and Defendants Salerno and

Flaherty are citizens of Connecticut. Am. Compl. ¶¶ 8, 11, 12. Defendants therefore have

removed this case to federal court under 28 U.S.C. § 1331 on the basis of federal question

jurisdiction.[5] *See* Notice of Removal at 1–4, ECF No. 1 (Jan. 24, 2022).

"Because plaintiff attempts to plead a civil RICO claim, [the Court] must confront the

question of subject matter jurisdiction at the threshold of the case." *Weaver v. James*, No. 10-

CV-6609 (NRB), 2011 WL 4472062, at *2 (S.D.N.Y. Sept. 27, 2011); *see also Purchase Real

Est. Grp., Inc. v. Jones*, No. 05-CV-10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010)

("[C]ourts should look 'with particular scrutiny' at civil RICO claims to ensure that the RICO

statute is used for the purposes intended by Congress." (citing *Goldfine v. Sichenzia*, 118 F.

---

[4] The Court notes that, although sufficiency of the civil RICO claim was not raised as an issue in briefing regarding the motion for a prejudgment remedy, temporary injunction, preliminary injunction, and order to show cause, Mr. Flaherty argues in his motion to dismiss that Ms. Maguire's claim for civil RICO against all Defendants fails to state a claim upon which relief can be granted, where she has failed to plead facts supporting the inference that any Defendant engaged in a pattern of racketeering activity. Mot. to Dismiss at 20–25. Mr. Flaherty also contends, in relation to the claim against him specifically, that Ms. Maguire has failed to plead facts giving rise to an inference of wire or mail fraud, or that she was damaged by his alleged conduct. *Id.*; *see also* Notice of Suppl. Authority re: Whether Plaintiff's RICO Claim Confers Subject Matter Jurisdiction on the Court, ECF No. 73 (May 19, 2022). Rather than respond to this motion to dismiss, Ms. Maguire filed an Amended Complaint. *See* Am. Compl.

[5] Where, as here, Plaintiff and at least one defendant share the same domicile, there is no basis for diversity jurisdiction. *See Soto v. Bushmaster Firearms Int'l, LLC.*, 139 F. Supp. 3d 560, 561 (D. Conn. 2015) ("For diversity jurisdiction to exist, there must be complete diversity between the plaintiffs and the defendants, in other words, no plaintiff can be a citizen of the same state as any of the defendants." (citation omitted)).

Supp. 2d 392, 397 (S.D.N.Y. 2000))). "Although the question of whether subject matter jurisdiction exists should not be confused with the question of whether the complaint states a cause of action, the Second Circuit has stated in the civil RICO context that some claims are '*so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction.'" *Weaver v. James*, No. 10-CV-6609 (NRB), 2011 WL 4472062, at *2 (S.D.N.Y. Sept. 27, 2011) (quoting *Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990)). Therefore, the Court evaluates not whether Plaintiff's civil RICO claim is one on which she may prevail, but whether it has met the "minimal, yet unyielding, jurisdictional standard." *Id.*

"To establish a RICO claim, a plaintiff must show: (1) a violation of . . . 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)). Under the civil RICO statute, 18 U.S.C. § 1962,

> [i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b).

In order "[t]o establish such a violation [of § 1962], a plaintiff must show[:] (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kimm*, 884 F.3d at 103 (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (internal quotation marks omitted)). In *Bridge v. Phoenix Bond & Indem. Co.*, the Supreme Court found the "scope of RICO's private right of action . . . makes it unlawful for any person to conspire to violate RICO's criminal prohibitions." 553 U.S. 639, 650 (2008) (internal quotation marks and

citation omitted). A plaintiff therefore must show conduct of an enterprise through a pattern of racketeering activity that meets the requisite "magnitude of criminality involved in RICO cases." *See Rizvi v. Urstadt Biddle Props. Inc.*, No. 3:17-CV-01410 (VAB), 2018 WL 4688305, at *1 (D. Conn. Sept. 28, 2018), *aff'd*, 791 F. App'x 282 (2d Cir. 2020) (summary order).

As explained further below, the Amended Complaint is entirely devoid of allegations that would comprise a requisite RICO enterprise or a pattern of racketeering activity; these deficiencies render the civil RICO claim "so patently without merit" as to warrant *sua sponte* dismissal of this claim for lack of subject matter jurisdiction.

### 1. Enterprise

The definition of "enterprise" in the civil RICO statute "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has defined a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct," which must be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "There is no requirement that a RICO enterprise possess any additional structural features beyond what is necessary to engage in a pattern of racketeering activity." *Weaver*, 2011 WL 4472062, at *1 (quoting *Boyle v. United States*, 129 S. Ct. 2237, 2245 (2009)). There is a requirement, however, that the RICO defendant and RICO enterprise must be "distinct." *Id.* (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162–63 (2001)).

Here, the alleged enterprise is not "separate from the pattern of racketeering activity." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (citing *Turkette*, 452 U.S. at 583). The Amended Complaint does not allege that Mr. Flaherty had any relationship with any of the Ameriprise Defendants outside of the various alleged transactions in the Amended Complaint as required to allege the existence of an "ongoing organization," *Turkette*, 452 U.S. at 583 (1981), or a "discrete economic association existing separately from the racketeering activity," *First Cap.*, 385 F.3d at 173 (citation omitted).

Further, although the Amended Complaint alleges that Mr. Salerno "has a history of deceiving clients in a similar manner," Am. Compl. ¶ 33, there is no allegation that he did so in concert with these Defendants, and it is well established that the actions of a single individual cannot constitute a civil RICO enterprise, *see Turkette*, 452 U.S. at 583 (stating that an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct"); *Cruz*, 720 F.3d at 121 ("Finally and obviously, neither Tradition nor FXDD standing alone can constitute an enterprise as an 'association in fact.'"); *Rosenson v. Mordowitz*, No. 11-CV-6145 (JPO), 2012 WL 3631308, at *10 (S.D.N.Y. Aug. 23, 2012) ("The crucial aspect of these association-in-fact entities [ ] is that they must have more than one member to operate as a RICO enterprise.").

In sum, the Amended Complaint is wholly devoid of allegations that the Defendants functioned "as a continuing unit" or were an "entity separate and apart" from their alleged activities. *Turkette*, 452 U.S. at 583. Rather, it appears "that this group of Defendants has been grouped together for the sole reason that they all allegedly had a hand" in Ms. Maguire's alleged disinheritance; the civil RICO enterprise, however, "must exist and function separately from the alleged illegal acts, and Plaintiff has failed to assert that." *Hoatson v. New York Archdiocese*, No.

14

05-CV-10467 (PAC), 2007 WL 431098, at *3 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280 F. App'x 88

(2d Cir. 2008) (summary order).

Without allegations of a distinct RICO enterprise, Ms. Maguire cannot sustain her civil

RICO claim.

### 2.  Pattern of Racketeering Activity

For similar reasons, Ms. Maguire also has entirely failed to allege the pattern of

racketeering activity required to sustain a civil RICO claim. Racketeering activity can be "any

act or threat involving" certain state law crimes or specified federal offenses. *See* 18 U.S.C. §

1961. To establish a pattern, the RICO statute requires at least two acts of racketeering activity

within a ten-year period. *See id.* This pattern can be alleged either as "an 'open-ended' pattern of

racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct)

or a 'closed-ended' pattern of racketeering activity (*i.e.*, past criminal conduct 'extending over a

substantial period of time')." *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir.

1995).

In her Amended Complaint, Ms. Maguire alleges the following acts of racketeering

activity between 2016 and 2019:

- On November 30, 2016, Ameriprise Defendants, in furtherance of the activities, purpose and scheme, falsely prepared and filed the falsified Transfer Form using interstate wires and/or electronic transmissions.
- On October 3, 2017, Salerno (then both Bernadette's and [Decedant's] investment advisor) referred [the Decedent] to Salerno's friend Flaherty to effect the fraudulent changes in [Decedent's] will.
- On November 6, 2017, in furtherance of the activities, purpose and scheme, Flaherty prepared a draft of the 2017 Invalid Will that was fraudulently revised by Bernadette.
- On December 5, 2017, in furtherance of the activities, purpose and scheme, Flaherty failed to advise [Decedent] as to the consequences

of the terms of the 2017 Invalid Will and had [Decedent] sign the 2017 Invalid Will without her informed consent.

- On February 20, 2018, Ameriprise Defendants, in furtherance of the activities, purpose and scheme, and with Flaherty's knowledge, filed the falsified Rollover Form using interstate wires and/or electronic transmissions.

- On January 22, 2019, Defendants, in furtherance of the activities, purpose and scheme, falsely and fraudulently transferred, using interstate wires and/or electronic transmissions, the balance of [Decedent's] Ameriprise Account to Bernadette.

- On February 4, 2019, Salerno, in furtherance of the activities, purpose and scheme, used interstate wires and/or electronic transmissions to inform Flaherty that [Decedent] had passed and that Bernadette wanted Flaherty to settle [Decedent's] estate.

- On February 11, 2019, in furtherance of Defendants' scheme, Salerno and Flaherty used interstate wires and/or electronic transmissions to communicate and conclude that they could "avoid probate all together."

- In March 2019, Ameriprise Defendants, in furtherance of the activities, purpose and scheme, using interstate wires and/or electronic transmissions, refused to provide any information to Plaintiff about her mother's account and told Plaintiff that she would "never" get any information about the Ameriprise Account and that the funds held under [Decedant's] account had already been transferred to Bernadette.

- On March 15, 2019, in furtherance of Defendants' scheme, knowing of Plaintiff's objections to the 2017 Invalid Will and knowing that Plaintiff had questioned the creation of and distributions from the Ameriprise Account, Flaherty filed the fraudulent 2017 Invalid Will with the Probate Court and, upon information and belief, misrepresented to the court that "there are no assets to be administered."

- On April 4, 2019, in furtherance of Defendants' scheme, Salerno and Flaherty used interstate wires and/or electronic transmissions to communicate regarding deficiencies in the Setup Form.

Am. Compl. ¶¶ 224–34;[6] *see also* RICO Case Statement at 5–15.

---

[6] In her most recent briefing on this issue, Plaintiff argues that she has alleged more than thirty acts of racketeering activity "commencing on or about November 9, 2016 and the last taking place . . . in late 2020." Suppl. Reply at 5 (citing Am. Compl. ¶¶ 26–101). Even if these acts were properly alleged as predicate acts in the RICO Case Statement, and assuming, without deciding, that these events constitute predicate acts, they fail to state a pattern of racketeering activity for the same reasons described herein.

Ms. Maguire does not specify whether her RICO count alleges a close- or open-ended continuity, but alleges a pattern "[b]eginning on October 21, 2016 and continuing through the transfer to Bernadette of funds held in [Decedent's] Ameriprise Account on January 22, 2019 until at least August 9, 2019[.]" Am. Compl. ¶ 223. As a result, there is no alleged "threat of continuing criminal activity beyond the period during which the predicate acts were performed" as required to allege an open-ended continuity. *First Cap.*, 385 F.3d at 180 (citation omitted). The Court therefore analyzes only whether a claim for closed-ended continuity has been alleged.

A closed-ended pattern of racketeering activity involves "predicate acts 'extending over a substantial period of time.'" *Id.* at 181 (quoting *GICC Cap. Corp.*, 67 F.3d at 466). "While this Circuit has not found acts spanning less than two years to be a close-ended pattern, acts that occurred over a longer period of time do not necessarily form a pattern." *Stein v. New York Stair Cushion Co.*, No. 04-CV-4741 (DRH) (ETB), 2006 WL 319300, at *7 (E.D.N.Y. Feb. 10, 2006) (citing *First Cap.*, 385 F.3d at 181 ("[W]hile two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern.")). "Although continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.'" *First Cap.*, 385 F.3d at 181 (quoting *DeFalco*, 244 F.3d at 321).

In conducting this analysis, the Second Circuit has cautioned that "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). In *Schlaifer Nance*, for example, the plaintiff alleged that the Estate of Andy Warhol

fraudulently induced plaintiff, over a three year period, to sign a licensing agreement by "transferring [plaintiff's] rights under the Agreement to others;" "accepting advance payments from sublicensees knowing [plaintiff] would not approve;" "fabricating bases for the disapproval of the licensing of many products;" "threatening to allege a known false claim of fraud against [plaintiff];" and "revising history through misrepresentation, deceit, and perjury, to cover up a pattern of racketeering activity." *Id*. at 96–97. The Court found that the plaintiff had not, under these facts, alleged close-ended continuity, where there was, in effect, only "one purportedly fraudulent act:" the negotiation of a licensing agreement. *Id*. at 97–98. The alleged acts of racketeering therefore were determined to be "subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose." *Id*. at 98. Similarly, here, the alleged predicate actions are subparts of a single act: the disinheritance of Ms. Maguire.

Even were this not the case, courts in this Circuit have repeatedly held that a plaintiff has not alleged a RICO violation where he or she has pled only a "single scheme of a narrow scope, including one victim and a limited number of participants." *Stein*, 2006 WL 319300, at *8; *see also MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) (summary order) (affirming dismissal of RICO claim for lack of closed-ended continuity, where "[a]t most, there is one scheme here"); *Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041 (RMB) (GWG), 2003 WL 22839799, at *11–*12 (S.D.N.Y. Dec. 1, 2003) (noting that "cases finding no closed-ended continuity have typically involved a single narrow scheme such as occurred here," *i.e.* to deprive the plaintiff of revenues, and "[m]any cases finding no closed-ended continuity have pointed to the existence of only one . . . victim") (collecting cases)), *report and recommendation adopted*, No. 03-CV-1041 (RMB) (GWG), 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004); *Lefkowitz v. Bank of New York*, No. 01-CV-6252 (VM),

2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003) (finding no closed-ended continuity where sixteen predicate RICO claims were alleged regarding administration of plaintiff's parents' estate, but where the complaint "essentially alleg[ed] that a small number of parties engaged in activities with a narrow purpose directed at a single or at most three victims: namely, defrauding [plaintiff] and the estates of her parents"), *aff'd in part and rev'd in part on other grounds*, 528 F.3d 102 (2d Cir. 2007); *First Cap.*, 385 F.3d at 182 (affirming district court dismissal of civil RICO claim where "[a]t bottom, Plaintiffs have alleged that [Defendant] engaged in a single scheme to defraud two creditors by quickly moving his assets to his relatives and then concealing the existence of those assets during his bankruptcy proceeding," and concluding that "however egregious [Defendant's] fraud on Plaintiffs may have been, they have failed to allege that he engaged in a pattern of racketeering activity").

Ms. Maguire essentially has alleged that a small number of individuals, including only two individually named Defendants, engaged in fraudulent activities with a single purpose directed at a single victim: to defraud Ms. Maguire.[7] Revealingly, although not dispositively for the purposes of this inquiry, Ms. Maguire admits as much in her civil RICO case statement, when she states that "each of the predicate acts were undertaken by entities associated with the enterprise as part of the same overarching scheme to disinherit and/or defraud the Plaintiff

---

[7] While Ms. Maguire alleges in the Amended Complaint that "Salerno has a history of deceiving clients in a similar manner" and that "[o]n two separate occasions, unrelated clients of Salerno [ ] alleged similar misrepresentations or deceit[,]" Am. Compl. ¶ 31, these conclusory allegations do not name a single other victim, *see Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 572 (W.D.N.Y. 2011) ("Merely to allege, [ ] that defendants 'employed the same scheme' with respect to [ ] other properties falls far short of compliance with [the] pleading standard" in Rule 9(b), which applies to any allegations of fraud, not just facts surrounding alleged fraud perpetrated against plaintiffs); *GICC Cap. Corp.*, 67 F.3d at 468 (dismissing RICO claim where "activities alleged involved only a handful of participants," despite "[p]laintiff's attempts to allege that the defendants' activities affected multiple victims, including investors whose residual interests were purchased at a discount and other creditors[,]" where "plaintiff does not identify any other victims, nor state in anything but general terms the nature of their purported injuries"). Further, although Ms. Maguire claims in her RICO Case Statement that the victims of the scheme are herself "and her descendants," RICO Case Statement at 4, no descendants are named in the RICO Case Statement or the Amended Complaint.

through the use of falsified financial documents and estate planning documents." RICO Case

Statement at 17. A scheme to defraud a single beneficiary of an estate is not the sort of "long-

term criminal conduct" needed for a civil RICO violation. *See GICC Cap. Corp.*, 67 F.3d at

469; *see also FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y.

2002) ("Courts in the Second Circuit have generally held that where the conduct at issue

involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking

in closed-ended continuity. This is the case even when the scheme's duration exceeds one year."

(collecting cases)).

Therefore, even assuming all inferences in the Plaintiff's favor, the Court finds, for the

reasons stated above, that Ms. Maguire's civil RICO claim cannot be sustained. In the absence of

any other federal claims in this case, the Court declines to exercise supplemental jurisdiction

over Ms. Maguire's remaining claims, which arise only under state law.[8] *Carnegie-Mellon Univ.*

*v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the

lawsuit in its early stages and only state-law claims remain, the federal court should decline the

exercise of jurisdiction by dismissing the case without prejudice." (citation omitted)); *Kolari v.*

*N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all

federal-law claims are eliminated before trial, the balance of factors . . . will point toward

declining to exercise supplemental jurisdiction over the remaining state-law claims.").

---

[8] The Court notes that the prejudgment remedy that Ms. Maguire seeks also arises under state law. *See* Fed. R. Civ. P. 64; *Bahrain Telecoms. Co. v. DiscoveryTel, Inc.*, 476 F. Supp. 2d 176, 183 (D. Conn. 2007) ("Rule 64 thus authorizes a federal court to borrow relevant state law on provisional remedies. And although the federal rules govern the conduct of the action in federal court, state law determines when and how a provisional remedy is obtained."). Connecticut law provides that a plaintiff may seek a prejudgment remedy, which shall be granted if there is "probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the prejudgment remedy sought, taking into account known defenses, counterclaims or setoffs, will be rendered in the matter in favor of the plaintiff." Conn. Gen. Stat. § 52-278c. The Court, having declined to exercise supplemental jurisdiction over Ms. Maguire's remaining state law claims, also does not reach this state law basis for provisional relief.

Accordingly, Ms. Maguire's motion for a prejudgment remedy, preliminary injunction, temporary injunction, and order to show cause will be dismissed for lack of jurisdiction.

### B.  Motion to Compel Arbitration

The motion to compel arbitration under the Federal Arbitration Act ("FAA") also does not confer jurisdiction in this case. Section 4 of the FAA provides that a party aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

> may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

"The phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it." *Doe v. Trump Corp.*, 6 F.4th 400, 415–16 (2d Cir. 2021) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)). Accordingly, "[Section] 4 of the FAA does not enlarge federal-court jurisdiction; rather, it confines federal courts to the jurisdiction they would have 'save for [the arbitration] agreement.'" *Id.* (citing *Vaden*, 556 U.S. at 66). Here, the only claim satisfying Section 1331 jurisdiction is the civil RICO claim, which, for the reasons stated above, is so patently without merit as to deprive the court of federal question jurisdiction. As a result, the Court, denies the motion to compel arbitration, in the absence of jurisdiction over this case. *See Acevado v. Citibank, N.A.*, No. 10-CV-8030 (PGG), 2017 WL 11514789, at *5 n.2 (S.D.N.Y. Mar. 20, 2017) ("Parties may not circumvent [the jurisdictional limits of the FAA] by asking a federal court to order arbitration of the portion of a controversy

that implicates federal law when the court would not have federal-question jurisdiction over the controversy as a whole.").

Accordingly, the motion to compel arbitration will be denied, without prejudice to renewal in any state court proceeding that may follow remand of this case.

### C. **Leave to Amend**

As a general matter, "it is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Where there is no indication, however, that pleading additional facts would resuscitate a claim that has been dismissed, the Court need not grant leave to amend. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be 'futil[e].'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[W]e do not find that the complaint 'liberally read' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe . . . . The problem with [this pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." (internal alterations, citations, quotation marks omitted)).

Here, Plaintiff, who is represented by counsel, has already filed an Amended Complaint and revised RICO Case Statement; she also has had the opportunity to address the issue of whether the civil RICO claim confers subject matter jurisdiction on this Court, in addition to oral

argument on that issue. Plaintiff has not, however, in any of those proceedings identified how another amended pleading would cure the substantive deficiencies identified above. *See Cuoco*, 222 F.3d at 112; *Jones*, 2010 WL 3377504 at *14 ("Plaintiffs have offered no indication of what a second amended complaint would contain. In light of Plaintiffs' previous amendment and their failure to identify how additional amendments will cure the deficiencies in the Amended Complaint, this Court denies leave to amend." (citations omitted)).

Accordingly, the Court will deny Ms. Maguire leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion for a prejudgment remedy, preliminary injunction, temporary injunction, and order to show cause due to a lack of jurisdiction. The Court also **DENIES** the motion to compel arbitration on the same grounds.

In the absence of jurisdiction over this case, the Clerk of Court respectfully is requested to remand this case to Connecticut Superior Court, the Judicial District of Stamford/Norwalk, and to close it here.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of May, 2022.

  /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge